ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X
                                      :
UNITED STATES OF AMERICA              :
                                      :
        - v. -                        :
                                      :    **SUPERSEDING INDICTMENT**
                                      :
NICOLÁS MADURO MOROS,                 :    S2 11 Cr. 205 (AKH)
DIOSDADO CABELLO RONDÓN,              :
HUGO ARMANDO CARVAJAL BARRIOS,        :
    a/k/a "El Pollo,"                 :
CLÍVER ANTONIO ALCALÁ CORDONES,       :
LUCIANO MARÍN ARANGO,                 :
    a/k/a "Ivan Marquez," and         :
SEUXIS PAUCIS HERNÁNDEZ SOLARTE,      :
    a/k/a "Jesús Santrich,"           :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 0 5 2020

                    Defendants.        :
- - - - - - - - - - - - - - - - - - X

## COUNT ONE
### (Narco-Terrorism Conspiracy)

The Grand Jury charges:

*Overview*

1.    From at least in or about 1999, up to and including
in or about 2020, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN,
HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO
ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and
SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the
defendants, participated in a corrupt and violent narco-terrorism
conspiracy between the Venezuelan *Cártel de Los Soles* and the
*Fuerzas Armadas Revolucionarias de Colombia* ("FARC").

2.    From at least in or about 1999, up to and including in or about 2020, the FARC was a terrorist organization -- led at times by LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, among others -- that became one of the largest producers of cocaine in the world and perpetrated acts of violence against United States nationals and property.

3.    From at least in or about 1999, up to and including in or about 2020, the *Cártel de Los Soles*, or "Cartel of the Suns," was a Venezuelan drug-trafficking organization comprised of high-ranking Venezuelan officials who abused the Venezuelan people and corrupted the legitimate institutions of Venezuela -- including parts of the military, intelligence apparatus, legislature, and the judiciary -- to facilitate the importation of tons of cocaine into the United States.    The name of the *Cártel de Los Soles* is a reference to the sun insignias affixed to the uniforms of high-ranking Venezuelan military officials who are members of the Cartel.

4.    NICOLÁS MADURO MOROS, the defendant, helped manage and, ultimately, lead the *Cártel de Los Soles* as he gained power in Venezuela.    Under the leadership of MADURO MOROS and others, the *Cártel de Los Soles* sought not only to enrich its members and enhance their power, but also to "flood" the United States with

2

cocaine and inflict the drug's harmful and addictive effects on users in this country. Thus, whereas most drug-trafficking organizations in South and Central America have sought to recede from their roles in importing narcotics into the United States in an effort to avoid U.S. prosecution, the *Cártel de Los Soles*, under the leadership of MADURO MOROS and others, prioritized using cocaine as a weapon against America and importing as much cocaine as possible into the United States.

5. While pursuing these and other objectives, NICOLÁS MADURO MOROS, the defendant, negotiated multi-ton shipments of FARC-produced cocaine; directed that the *Cártel de Los Soles* provide military-grade weapons to the FARC; coordinated foreign affairs with Honduras and other countries to facilitate large-scale drug trafficking; and solicited assistance from FARC leadership in training an unsanctioned militia group that functioned, in essence, as an armed forces unit for the *Cártel de Los Soles*.

### The Cártel de Los Soles and the Venezuelan Defendants

6. At various times between 1999 and 2020, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," and CLÍVER ANTONIO ALCALÁ CORDONES, the defendants, acted as leaders and managers of the *Cártel de Los Soles* and the narco-terrorism conspiracy with the FARC.

7. NICOLÁS MADURO MOROS, the defendant, is a Venezuelan citizen, was previously the president of Venezuela, and is now the *de facto* ruler of the country. MADURO MOROS also previously held a seat in the Venezuelan National Assembly between in or about 2000 and in or about 2006, acted as the Venezuelan foreign minister between in or about 2006 and in or about 2013, and acted as the vice president of Venezuela in or about 2013. MADURO MOROS succeeded to the Venezuelan presidency after Hugo Chávez died in or about 2013 and, during his presidency, continued to participate in cocaine trafficking with the *Cártel de Los Soles* and the FARC. In or about 2018, MADURO MOROS declared victory in a presidential election in Venezuela. In or about 2019, the National Assembly of Venezuela invoked the Venezuelan constitution and declared that MADURO MOROS had usurped power and was not the president of Venezuela. Since in or about 2019, more than 50 countries, including the United States, have refused to recognize MADURO MOROS as Venezuela's head of state and instead recognized Juan Guaidó as the interim president of Venezuela. In or about January 2020, the United States Department of State certified the authority of Guaidó, as the interim president of Venezuela, to receive and control property in accounts at the United States Federal Reserve maintained by the Venezuelan government and the Central Bank of Venezuela.

4

8.     DIOSDADO CABELLO RONDÓN, the defendant, is a
Venezuelan citizen, president of Venezuela's National Constituent
Assembly, and a member of the Venezuelan armed forces.    CABELLO
RONDÓN previously acted as chief of staff to Chávez in or about
2001, vice president of Venezuela in or about 2002, governor of
Venezuela's Miranda State between in or about 2004 and in or about
2008, and president of Venezuela's National Assembly between in or
about 2012 and in or about 2016.

9.     HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo,"
the defendant, is a Venezuelan citizen and was the director of
Venezuela's military intelligence agency, which was known as the
*Dirección de Inteligencia Militar* ("DIM"), between in or about
2004 and in or about 2011.    In or about 2013, NICOLÁS MADURO MOROS,
the defendant, made CARVAJAL BARRIOS the director of the DIM for
a second time.    Between in or about January 2014 and in or about
June 2014, CARVAJAL BARRIOS held the title of Venezuela's consul
general to Aruba.    In or about January 2016, despite being a
fugitive on drug-trafficking charges that have been pending in the
Southern District of New York since at least in or about 2011,
CARVAJAL BARRIOS was elected to the Venezuelan National Assembly.
As of the filing of this Superseding Indictment, CARVAJAL BARRIOS
remains a fugitive on pending charges in underlying indictments in

the Southern District of New York and subject to a lawful order of extradition issued by Spain in or about 2019.

10. CLÍVER ANTONIO ALCALÁ CORDONES, the defendant, is a Venezuelan citizen and a former general in the Venezuelan military.

*The FARC and the FARC Defendants*

11. Between at least in or about 1999, up to and including in or about 2020, the FARC became one of the largest producers of cocaine in the world. The FARC has also directed violent acts against United States persons and property in foreign jurisdictions, including, but not limited to, Colombia. For example, the FARC leadership ordered FARC members to kidnap and murder United States citizens and to attack United States interests in order to dissuade the United States from continuing its efforts to fumigate FARC coca fields and disrupt the FARC's manufacturing and distribution of cocaine and cocaine paste. Consistent with these activities, in or about 1997, the United States Department of State designated the FARC as a Foreign Terrorist Organization. The FARC remains so designated as of the filing of this Superseding Indictment.

12. LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," the defendant, is a Colombian citizen who joined the FARC in or about 1985. In or about 2006, the United States Attorney's Office for

6

the Southern District of New York filed a drug-trafficking charge against 50 leaders of the FARC, including MARÍN ARANGO. As of the filing of this Superseding Indictment, MARÍN ARANGO is a fugitive on that charge and a member of the FARC's Secretariat, which is the FARC's highest leadership body.

13. SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendant, is a Colombian citizen who joined the FARC in or about 1991. As of the filing of this Superseding Indictment, HERNÁNDEZ SOLARTE is a member of the FARC's Central High Command, which is the FARC's second-highest leadership body.

*Means and Methods of the Narco-Terrorism Conspiracy*

14. In furtherance of the narco-terrorism conspiracy, at various times between in or about 1999 and in or about 2020, members of the conspiracy organized their drug-trafficking activities as follows:

a. Beginning in or about 1999, while the FARC was purporting to negotiate toward peace with the Colombian government, the FARC agreed with leaders of the *Cártel de Los Soles* to relocate some of its operations to Venezuela under the protection of the Cartel.

b. Members and associates of the FARC, operating under the leadership of LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the

7

defendants, among others, cultivated coca leaves on farms in Colombia and Venezuela, such as in southwest Colombia and in the Serranía del Perijá mountain range that spans Colombia and Venezuela.

          c. The FARC and the *Cártel de Los Soles* dispatched processed cocaine from Venezuela to the United States via transshipment points in the Caribbean and Central America, such as Honduras. By in or about 2004, the United States Department of State estimated that 250 or more tons of cocaine were transiting Venezuela per year. The maritime shipments were shipped north from Venezuela's coastline using go-fast vessels, fishing boats, and container ships. Air shipments were often dispatched from clandestine airstrips, typically made of dirt or grass, concentrated in the Apure State.

          d. In order to achieve safe passage for the large cocaine shipments transiting Venezuela, members and associates of the FARC and the *Cártel de Los Soles* paid bribes, which ultimately benefited NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," and CLÍVER ANTONIO ALCALÁ CORDONES, the defendants, among others, in exchange for, for example, access to commercial ports and data from air and maritime radar in Venezuela. According to the United States Department of State, approximately 75 unauthorized flights

suspected of drug-trafficking activities entered Honduran airspace in 2010 alone, using what is known as the "air bridge" cocaine route between Venezuela and Honduras.

e. MADURO MOROS, CABELLO RONDÓN, CARVAJAL BARRIOS, and ALCALÁ CORDONES coordinated with the FARC in furtherance of the narco-terrorism conspiracy in order to: transport and distribute these large cocaine shipments; benefit from, and cause others to participate in, the provision of heavily armed security to protect the cocaine shipments; cause large quantities of previously-seized cocaine to be sold to drug traffickers in exchange for millions of dollars; interfere with drug-trafficking investigations and pending criminal cases in Venezuela and elsewhere; and help provide the FARC with military-grade weapons, including machineguns, ammunition, rocket launchers, and explosives equipment.

*Acts in Furtherance of the Narco-Terrorism Conspiracy Between the Cártel de Los Soles and the FARC*

15. In furtherance of the narco-terrorism conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed:

a. In or about 2003, an associate of the FARC and the *Cártel de Los Soles* paid SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a

"Jesús Santrich," the defendant, $300,000 to help establish a FARC camp near Apure, Venezuela where the FARC could process cocaine.

b.    In or about 2005, Chávez instructed NICOLÁS MADURO MOROS, the defendant, who was then a member of the Venezuelan National Assembly, and others, that Venezuelan judges who would not protect the FARC and its activities should be removed from their positions. That same year, the Venezuelan government largely terminated Venezuela's participation in bilateral counter-narcotics operations with the Drug Enforcement Administration ("DEA").

c.    In or about 2006, Chávez made MADURO MOROS the foreign minister of Venezuela. During the same year, the FARC paid MADURO MOROS $5 million in drug proceeds, through a third party, in connection with a money-laundering scheme that was part of the narco-terrorism conspiracy. MADURO MOROS and others agreed to launder many millions of dollars from the FARC, including the $5 million, by purchasing palm oil extraction equipment from Malaysia with drug proceeds, which would be used to support the operation of African palm plantations in Apure that would appear legitimate. In connection with this scheme, in or about December 2006, Venezuela announced trade agreements with Malaysian firms relating to African palm oil extraction and crude oil exploration in Venezuela.

d.    In or about 2006, the *Cártel de Los Soles* dispatched a 5.6-ton cocaine shipment from Venezuela on a DC-9 jet bearing a United States registration number.    DIOSDADO CABELLO RONDÓN and HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," the defendants, worked with other members of the *Cártel de Los Soles* to coordinate the shipment.    The jet departed Venezuela from Simón Bolívar International Airport in Maiquetía, Venezuela (the "Maiquetía Airport"), and landed at Ciudad del Carmen Airport in Campeche, Mexico.    Mexican authorities seized the 5.6 tons of cocaine when it arrived in Campeche.

e.    In or about 2008, Chávez, who was at that time the president of Venezuela and one of the leaders of the *Cártel de Los Soles*, agreed with LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," the defendant, to use funds from the Venezuelan state-owned oil producer, Petróleos de Venezuela (PDVSA), to support the FARC's drug-trafficking and terrorist operations.

f.    In or about 2008, MADURO MOROS, CABELLO RONDÓN, and CARVAJAL BARRIOS attended a meeting with a FARC representative at which the attendees agreed that the *Cártel de Los Soles* would provide the FARC cash and weapons in exchange for increased cocaine production.    During the meeting, MADURO MOROS agreed to abuse his authority as foreign minister to ensure that

the border between Venezuelan and Colombia remained open to facilitate drug trafficking.

g. In or about 2008, CABELLO RONDÓN, CARVAJAL BARRIOS, and CLÍVER ANTONIO ALCALÁ CORDONES, the defendant, held a meeting at which they agreed that ALCALÁ CORDONES would take on additional duties coordinating drug-trafficking activities by the *Cártel de Los Soles* and the FARC.

h. In or about 2009, MADURO MOROS, CABELLO RONDÓN, and CARVAJAL BARRIOS attended a meeting with a FARC representative at which the attendees discussed a four-ton cocaine shipment that the FARC was prepared to transport to the *Cártel de Los Soles*. CABELLO RONDÓN directed that the FARC deliver the cocaine to a particular location in Venezuela, where a jet would be waiting to transport the cocaine to Nicaragua for further shipment to Mexico and importation into the United States. During the meeting, the group also discussed a recent coup d'état in Honduras, and CABELLO RONDÓN warned, in substance and in part, that the resulting instability could "fuck up the business." MADURO MOROS traveled to Honduras after the meeting, purporting to act as the Venezuelan foreign minister, in order to try to intervene on behalf of the *Cártel de Los Soles* so that events in Honduras would not disrupt the drug-trafficking activities of the narco-terrorism conspiracy.

i.    In or about September 2013, months after
MADURO MOROS succeeded to the Venezuelan presidency, the *Cártel de
Los Soles* dispatched 1.3 tons of cocaine on a commercial flight
from the Maiquetía Airport to Paris Charles de Gaulle Airport.
French authorities seized the cocaine.    Following the seizure,
MADURO MOROS cancelled a trip to attend a session of the U.N.
General Assembly in New York, citing to the media purported death
threats against him.  In Venezuela, MADURO MOROS convened a meeting
with, among others, CABELLO RONDÓN and CARVAJAL BARRIOS.    During
the meeting, MADURO MOROS told CABELLO RONDÓN and CARVAJAL BARRIOS,
in substance and in part, that they should not have used the
Maiquetía Airport for drug trafficking after the 2006 seizure in
Mexico, and that the *Cártel de Los Soles* should instead use its
other well-established drug routes and locations to dispatch
cocaine.

j.    In or about September 2013, shortly after
French authorities seized the 1.3-ton cocaine shipment from the
*Cártel de Los Soles*, MADURO MOROS and others authorized the arrests
of Venezuelan military officials in an effort to divert public and
law enforcement scrutiny from the participation in the shipment by
MADURO MOROS, CABELLO RONDÓN, and CARVAJAL BARRIOS.

k.    In or about 2014, MADURO MOROS met with MARÍN
ARANGO at a military base in Caracas.  During the meeting, MADURO

MOROS agreed to continue to provide weapons to the FARC and requested that the FARC help train an armed militia group in Venezuela. MADURO MOROS also told MARÍN ARANGO, in substance and in part, that the militia would not be associated with the Venezuelan government, which would afford plausible deniability to government officials for the militia's anticipated violence. MARÍN ARANGO agreed to help MADURO MOROS train the militia and later facilitated training for members of the militia near his FARC camp in Zulia State.

l.     In or about July 2014, Aruban authorities provisionally arrested CARVAJAL BARRIOS at the request of the United States.  In response, MADURO MOROS, CABELLO RONDÓN, and other members of the *Cártel de Los Soles* pressured Aruba and the Dutch government to release CARVAJAL BARRIOS, including by reportedly deploying Venezuelan naval assets toward Aruba.  Aruba released CARVAJAL BARRIOS, and he returned to the protection of the *Cártel de Los Soles* in Venezuela.

m.     In or about 2015, following the agreement between MADURO MOROS and MARÍN ARANGO regarding the provision of weapons and other equipment, members of the *Cártel de Los Soles* diverted Venezuelan military equipment to the FARC. CABELLO RONDÓN personally participated in the delivery of machineguns, ammunition, and rocket launchers to the FARC at a military base in

14

Venezuela. During the delivery, CABELLO RONDÓN and others discussed the fact that the weapons were a partial payment for cocaine that the FARC had provided to members of the *Cártel de Los Soles*.

n. Between in or about October 2015 and in or about November 2015, Efrain Campo Flores and Franqui Francisco Flores de Freitas -- two relatives of MADURO MOROS -- agreed during recorded meetings with DEA confidential sources to dispatch multi-hundred-kilogram cocaine shipments from MADURO MOROS's "presidential hangar" at the Maiquetía Airport. During recorded meetings with the sources, Campo Flores and Flores de Freitas explained that they were at "war" with the United States, described the *Cártel de Los Soles*, discussed a connection to a "commander for the FARC" who was "supposedly high-ranked," and indicated that they were seeking to raise $20 million in drug proceeds to support a campaign by the Venezuelan first lady -- and wife of MADURO MOROS -- in connection with a late-2015 election for the Venezuelan National Assembly. Campo Flores referred to MADURO MOROS as his "father," and stated that "what we want is for him to take control again of the . . . National Assembly." Flores de Freitas joked that "any opposing candidate who comes out and starts to become a pest . . . three or four have already been locked up." In November 2016, Campo Flores and Flores de Freitas were convicted at trial

in the Southern District of New York of conspiring to import cocaine into the United States.

o.     In or about 2017, MADURO MOROS continued to work with and direct other members of the *Cártel de Los Soles* to dispatch large cocaine shipments to the United States. Specifically, CABELLO RONDÓN and other members of the *Cártel de Los Soles* facilitated air shipments of ton quantities of cocaine to clandestine airstrips in Venezuela's Barinas State.     Uniformed FARC personnel armed with machineguns and other weapons helped receive the cocaine in Barinas and loaded the drugs into vehicles with secret compartments to be transported toward the Venezuelan coast for further distribution.

p.     Beginning in or about 2017, after purporting to negotiate peace agreements with the Colombian government on behalf of the FARC in or about 2016, HERNÁNDEZ SOLARTE agreed to provide a multi-ton quantity of cocaine to DEA confidential sources so that the drugs could be imported into the United States.     The sources purported to work for Rafael Caro Quintero, a Mexican drug trafficker who participated in the 1985 torture and murder of DEA Agent Enrique "Kiki" Camarena.     During a recorded meeting, HERNÁNDEZ SOLARTE referred to the murder of Camarena by characterizing Caro Quintero as the person who had killed the "son of the bitch of the DEA."

q. In or about June 2018, Colombian authorities provisionally arrested HERNÁNDEZ SOLARTE, at the request of the United States Attorney's Office for the Southern District of New York, based on a cocaine-importation conspiracy charge in this District related to HERNÁNDEZ SOLARTE's agreement with DEA confidential sources to provide large quantities of cocaine for importation into the United States in or about 2017 and 2018. HERNÁNDEZ SOLARTE was subsequently released, however, and is a fugitive as of the filing of this Superseding Indictment.

r. In or about July 2019, MADURO MOROS and CABELLO RONDÓN attended a videotaped press conference at which MADURO MOROS announced that the FARC, and in particular MARÍN ARANGO and HERNÁNDEZ SOLARTE, are welcome in Venezuela.

s. In August 2019, MARÍN ARANGO, standing near HERNÁNDEZ SOLARTE, announced in a videotaped statement that the FARC was beginning a "new phase" of its "armed struggle." MARÍN ARANGO characterized this "struggle" as a "continuation of the rebel fight."

STATUTORY ALLEGATIONS

16. From at least in or about 1999, up to and including in or about 2020, in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, including in Venezuela, Colombia, Mexico, Iran, Syria,

Lebanon, and elsewhere, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, at least one of whom will be first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 21, United States Code, Section 960a.

17. It was a part and an object of the conspiracy that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, would and did engage in conduct that would be punishable under Title 21, United States Code, Section 841(a) if committed within the jurisdiction of the United States, to wit, the distribution of, and possession with the intent to distribute, five kilograms and more of mixtures and substances containing a detectable amount of cocaine, knowing and intending to provide, directly and indirectly, something of pecuniary value to a person and organization that has engaged and engages in terrorism and terrorist activity, to wit, the FARC (which has been

18

designated by the United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act and remains so designated) and its members, operatives, and associates, having knowledge that such organization and persons have engaged and engage in terrorism and terrorist activity, in violation of Title 21, United States Code, Section 960a.

> (Title 21, United States Code, Section 960a; and
> Title 18, United States Code, Section 3238.)

## COUNT TWO
### (Cocaine Importation Conspiracy)

The Grand Jury further charges:

18. Paragraphs 1 through 15 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

19. From at least in or about 1999, up to and including in or about 2020, in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, including in Venezuela, Colombia, Mexico, Iran, Syria, Lebanon, and elsewhere, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, at least

one of whom will be first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate provisions of Title 21, United States Code, Chapter 13, Subchapter II.

20. It was a part and an object of the conspiracy that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, would and did import into the United States from a place outside thereof a controlled substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

21. It was further a part and an object of the conspiracy that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, would and did manufacture, distribute, and possess with intent to distribute a controlled substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported

20

into the United States and into waters within a distance of 12 miles of the coast of the United States, in violation of Title 21, United States Code, Sections 959(a) and 960(a)(3).

22. It was further a part and an object of the conspiracy that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, would and did, on board an aircraft registered in the United States, manufacture, distribute, and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 959(c) and 960(a)(3).

23. The controlled substance that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, conspired to (i) import into the United States and into the customs territory of the United States from a place outside thereof, (ii) manufacture and distribute, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the

21

United States from a place outside thereof, and (iii) manufacture, distribute, and possess on board an aircraft registered in the United States, was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 960(b)(1)(B).

(Title 21, United States Code, Section 963; and
Title 18, United States Code, Section 3238.)

**COUNT THREE**
**(Possession of Machineguns and Destructive Devices)**

The Grand Jury further charges:

24. Paragraphs 1 through 15 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

25. From at least in or about 1999, up to and including in or about 2020, in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, including in Venezuela, Colombia, Mexico, Iran, Syria, Lebanon, and elsewhere, and for which at least one of two or more joint offenders will be first brought to and arrested in the Southern District of New York, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús

Santrich," the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, to wit, the controlled substance offenses charged in Counts One and Two of this Superseding Indictment, knowingly used and carried firearms, and, in furtherance of such crime, knowingly possessed firearms, and aided and abetted the use, carrying, and possession of firearms, to wit, machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices.

(Title 18, United States Code,
Sections 924(c)(1)(A), 924(c)(1)(B)(ii), 3238, and 2.)

## COUNT FOUR
### (Conspiracy to Possess Machineguns and Destructive Devices)

The Grand Jury further charges:

26. Paragraphs 1 through 15 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

27. From at least in or about 1999, up to and including in or about 2020, in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, including in Venezuela, Colombia, Mexico, Iran, Syria, Lebanon, and elsewhere, NICOLÁS MADURO MOROS, DIOSDADO CABELLO

RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, at least one of whom will be first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 924(c).

28. It was a part and an object of the conspiracy that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, would and did, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, to wit, the controlled substance offenses charged in Counts One and Two of this Superseding Indictment, use and carry firearms, and, in furtherance of such drug trafficking crime, possess firearms, including machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 924(c)(1)(B)(ii).

(Title 18, United States Code, Sections 924(o) and 3238.)

**FORFEITURE ALLEGATION**
**(As to Counts One and Two)**

29. As a result of committing the controlled substance offenses charged in Counts One and Two of this Superseding Indictment, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853 and 970, any and all property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of the offenses, and any and all property used, or intended to be used, in any manner or part, to commit, and to facilitate the commission of, the offenses charged in Counts One and Two of this Superseding Indictment.

**FORFEITURE ALLEGATION**
**(As to Counts Three and Four)**

30. As a result of committing the firearms offenses charged in Counts Three and Four of this Superseding Indictment, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS

PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), all firearms and ammunition involved in and used in the commission of the offenses charged in Counts Three and Four of this Superseding Indictment.

### Substitute Assets Provision

31.  If any of the above-described forfeitable property, as a result of any act or omission of NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Sections 853(p) and 970, and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 21, United States Code, Sections 853 & 970; and Title 28, United States Code, Section 2461(c).)

_____
FOREPERSON

_____
GEOFFREY S. BERMAN
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

NICOLÁS MADURO MOROS,
DIOSDADO CABELLO RONDÓN,
HUGO ARMANDO CARVAJAL BARRIOS,
a/k/a "El Pollo,"
CLÍVER ANTONIO ALCALÁ CORDONES,
LUCIANO MARÍN ARANGO,
a/k/a "Ivan Marquez," and
SEUXIS PAUCIS HERNÁNDEZ SOLARTE,
a/k/a "Jesús Santrich,"

Defendants.

**SUPERSEDING INDICTMENT**

S2 11 Cr. 205 (AKH)

(21 U.S.C. §§ 960a, 963; and
18 U.S.C. §§ 924, 3238, 2.)

GEOFFREY S. BERMAN
United States Attorney.

**A TRUE BILL**

*Angella Bucco Dpty* Foreperson.

3/5/2020

Filed Indictment under seal
Arrest warrants issued

USMJ FOX