

Adam S. Kaufmann
212 822 0128
adam.kaufmann@lbkmlaw.com

June 29, 2020

**Via ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Courtroom 14D
New York, NY 10007

**Re: United States v. Cliver Antonio Alcalá Cordones, S2 11 Cr. 205 (AKH)**

Dear Judge Hellerstein,

This firm represents General Cliver Alcalá Antonio Cordones in the above-referenced proceedings.  We write on behalf of General Alcalá to request that the Court assign, as CJA counsel, the below-named counsel as General Alcalá's legal team.  I note that while I and the other attorneys of Lewis Baach Kaufmann Middlemiss pllc ("LBKM") set forth below have extensive experience in criminal representation and trials, none of us are members of the SDNY CJA panel. In the alternative, we respectfully request that you appoint counsel from the CJA panel or Federal Defenders as lead trial counsel, but also permit the LBKM attorneys to remain on the case as co-counsel.  The complexities and gravity of this case and the interests of justice warrant the approval of such an arrangement.

General Alcalá was a highly respected commanding general in the Venezuelan army until 2013, attaining the rank of Major General and holding command over half of his country's army. In 2013 two events occurred that caused General Alcalá to retire from the army.  The first was the death of President Hugo Chavez and the subsequent appointment of Nicolas Maduro as president. General Alcalá considered Mr. Maduro an opportunist and political hack.  He was not a political leader whom General Alcalá was prepared to follow, and indeed, General Alcalá was a steadfast and very public opponent to Mr. Maduro from Maduro's earliest days in office.  Second, in the summer of 2013, General Alcalá achieved 30 years of service to his country.  Given the change in political leadership and his fulfillment of 30 years of service, General Alcalá decided it was time to retire from the military.

I have represented General Alcalá in his dealings with law enforcement in the United States since 2013.  As such, I have developed a close working relationship with General Alcalá and am

The Chrysler Building    |    405 Lexington Avenue, 64th Floor    |    New York, NY 10174    |    t 212 826 7001    |    f 212 826 7146

NEW YORK    WASHINGTON    LONDON    BUENOS AIRES

lbkmlaw.com

extremely familiar with the facts and legal issues pertaining to this case.  Our representation over the years related to negotiations with the government concerning its investigation of General Alcalá's relationship with the FARC and his designation as a Specially Designated National by the Office of Foreign Assets Control (OFAC) of the U.S. Treasury Department.

We have represented General Alcalá on a pro bono basis since 2014 or 2015.  To my knowledge, Mr. Alcalá today has no appreciable assets and cannot afford private representation. Since late in 2014 my firm's representation of General Alcalá consisted primarily of intermittent conversations with U.S. government officials concerning his status as a Specially Designated National and our efforts to remove that designation.  During this time, I spoke to General Alcalá only sporadically.  On March 26, 2020, he called me from Colombia to inform me that a representative from the U.S. Embassy in Bogota had contacted him to advise him that an indictment and provisional arrest warrant against him would be unsealed the next day.  The U.S. government informed General Alcalá that he could surrender voluntarily to the DEA, or he could stay in a Colombian jail and contest extradition.  Following a privileged conversation with me, General Alcalá indicated his intent to board a private jet chartered by the DEA to surrender to U.S. authorities in New York.  General Alcalá asked my firm to represent him, indicating it was possible that a distant cousin might have funds to pay for the representation.  General Alcalá arrived in the United States on or about March 28, 2020 and was arraigned on the instant indictment on March 30, 2020.

Following General Alcalá's arrival in the United States, my firm investigated whether Mr. Alcalá or his family would be able to pay our fees.  We quickly learned that it would be impossible. The distant cousin of General Alcalá's did not have the financial ability to pay anywhere near the types of fees associated with a case of this nature and scope.  He offered a small payment of $5,000 but explained that even that payment would be difficult.  General Alcalá himself has virtually no money – his wife and daughter live in Colombia and depend on the help of her relatives to support their basic daily needs.  Moreover, the meager resources General Alcalá owned in Venezuela (which he left behind when he was forced to flee his country in March 2018) have been taken by the Venezuelan government, who have also imprisoned various family members in response to reports that General Alcalá was involved in an attempted military intervention in Venezuela earlier this year.  LBKM has received no fees in connection with our representation of General Alcalá on the instant indictment.

As the Court is aware, General Alcalá is charged in an extraordinarily broad indictment containing charges that, if he is convicted, carry a potential sentence of life in prison.  The other indicted but unapprehended co-defendants include the president (or former president) of Venezuela, the president of the Venezuelan National Assembly, and the former head of Venezuela's military intelligence service.  My firm has a particular knowledge of General Alcalá's personal history as a high-ranking general in the Venezuelan army, his interactions with prosecutors and agents in 2013-2015, and his active efforts from 2013-2020 to oppose and then overthrow the corrupt Maduro regime.  My firm has spent the past three months gathering

information about this matter and investigating General Alcalá's possible defenses. His history with the U.S. government will play a role in his defense. Finally, my firm has deep experience handling matters related to Venezuela, including a familiarity with Venezuelan politics and the involvement of the U.S. government in Venezuelan matters. We do not wish at this juncture to presage our defense, but we believe this institutional knowledge, coupled with our specific knowledge of General Alcalá's history, will be crucial to his defense.

In addition to our familiarity with Mr. Alcalá and the specifics of his case, the attorneys identified herein possesses the following qualifications for the requested appointment:

- Anthony Capozzolo was a federal prosecutor in the Eastern District of New York for six years and an Assistant District Attorney in Manhattan for fourteen years before that. He has tried over 35 cases in federal and state court including RICO charges, and as defense counsel tried a federal securities fraud matter in the Southern District of New York. As a defense counsel, he has represented numerous defendants in federal court. If approved, he will serve as lead trial counsel in this matter.

- I was a prosecutor in the Manhattan District Attorney's Office for 19 years where I tried numerous felony cases. I eventually served as chief of the International Economic Crime Bureau to District Attorney Robert Morgenthau and Chief of the Investigation Division under District Attorney Cyrus Vance. I have worked on many federal matters both as a prosecutor (joint investigations in white-collar, narcotics, sanctions, and terrorism matters) and as retained defense counsel, but I have not tried a case in federal court.

- Cristián Francos is an Argentine lawyer who is also admitted to the New York bar. A native Spanish-speaker, he has been the primary point of contact for General Alcalá since he surrendered in March. General Alcalá does not speak English; I speak some Spanish but not at the level of fluency. Mr. Francos also has extensive experience working with Latin American clients involved in criminal cases in the United States, including our firm's representation of an Argentine national in an FCPA case in the Southern District of New York (*United States v. Sharef et al*, 1:11-cr-01056-DLC (Judge Denise Cote)). He also has extensive knowledge about Venezuela.

We are fully prepared to move forward with the defense of this matter. We have discussed with the Government the production of discovery and have reviewed the discovery stipulations provided by the Government. We are prepared to execute these and move forward with the case should this application be approved by the Court.

Moreover, it will be difficult for new counsel to absorb the complex history associated with this case on his or her own.  It is a detailed history and crucial to aspects of defenses that may be available to General Alcalá.  Such difficulties will be exacerbated by the general inability of counsel to meet with incarcerated clients occasioned by the Covid-19 pandemic.  Here it is even more difficult in that, as noted above, General Alcalá does not speak English.

While it is not typical to appoint private counsel at CJA rates, there is precedent for such a decision.  In *United States v. Daniel Bonentre*, Criminal Docket No. 10-228 (LTS), Judge Swain permitted appointment of two attorneys and their associates as CJA counsel to represent a defendant for whom they had previously been privately retained. (Dkt. No. 378.) There, the attorneys had a longstanding relationship with the defendant and familiarity with the case, and the court permitted the CJA appointment after the government's seizure of the defendant's assets prevented him from being able to continue to pay for private counsel. In addition, my partners Eric Lewis, Jeffrey Robinson and Waleed Nassar were appointed to represent Ahmad Abu Khatallah in a capital case in the United States District Court for the District of Columbia, along with the Federal Public Defender (*United States v. Abu Khatallah*, 1:14-CR-212 (Judge Christopher R. Cooper)). [1]  The case resulted in acquittal by the jury on all homicide counts.  That case also presented cultural and language issues and our team was able to provide necessary assistance.

In the case now at hand, we enjoy a longstanding relationship with this defendant that leaves us uniquely positioned to assist in his representation. Accordingly, we respectfully request that Your Honor grant this application and permit the appointment of myself, Mr. Capozzolo, and Mr. Francos as CJA counsel for General Alcalá.[2]

We further respectfully seek to have such appointment granted *nunc pro tunc* from March 28, 2020.  If appointed, we will work with the CJA panel Administrator to prepare a budget and we will attend such administrative training as directed by the administrator and the Court.

We also wish to make the Court aware that we have applied for a license from OFAC that would authorize the receipt of payment for the representation.  The application is pending.

Finally, as the Court is aware, General Alcalá has been held without bail in this matter.  We would like to reserve any bail argument for a later date.  We respectfully request that the Court

---

[1] We are informed by the Government that Federal Defender's Service is conflicted out of this case because of a prior representation.

[2] As noted, if the Court is inclined to assign counsel already on the CJA panel, we respectfully request that we remain on the case.  We also wish to make the Court aware that during the period when we thought Mr. Alcalá might be able to afford private counsel, we spoke with attorney Cesar Castro, who is also a member of the SDNY CJA panel.  Mr. Castro also participated in one call with Mr. Aclala.  At the time, we hoped to bring Mr. Castro on as a member of the defense team to be retained by General Alcalá.  As a fluent Spanish speaker and an experienced trial attorney, Mr. Castro would have been an important part of the team.  Of course, Mr. Alcalá's financial situation rendered the proposal moot.  We mention this to the Court because, if the Court is inclined to grant this request, Mr. Castro remains a viable attorney with CJA credentials and fluency in Spanish.



order that General Alcalá continue to be held in his present facility, the Putnam County Jail. According to our information, this facility has done a good job of maintaining health standards during the Covid-19 crisis.  We have also found it relatively easy to communicate with General Alcalá by phone.

We have discussed this matter with the prosecutors assigned to this case and we understand the Government takes no position with regard to our application to be assigned as CJA counsel. We look forward to answering such questions as the Court may have at the July 1st calendar date.

Respectfully submitted,

Adam S. Kaufmann

cc: AUSAs Matthew Laroche, Jason Richman, Amanda Houle, Kyle Wirshba