

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 31, 2023

**BY CM/ECF**
Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re:   *United States v. Hugo Armando Carvajal Barrios*, S2 11 Cr. 205 (AKH)

Dear Judge Hellerstein:

The Government respectfully writes in opposition to the defendant's renewed motion to depose Fernando Blengio, a/k/a "Luis Fernando Bertulucci Castillo," pursuant to Federal Rule of Criminal Procedure 15. (D.E. 129.) On December 2, 2022, the Court denied the defendant's initial Rule 15 motion and determined he "may renew his motion upon a stronger showing of exceptional circumstances after he appears in this court." (D.E. 110.) The defendant's renewed motion cites only two changed circumstances since his initial motion last year: (i) the defendant has appeared in this Court; and (ii) Blengio has been deported to Mexico. (D.E. 129 at 2-3.) As explained below, even if the defendant met his burden to demonstrate that Blengio is unavailable (and he has not), the proposed testimony does nothing to exculpate the defendant. As such, the defendant still cannot show that Blengio's proposed testimony is material. Accordingly, the defendant cannot establish exceptional circumstances that warrant Blengio's deposition, and the Court should deny the motion.

## I.   Relevant Law

As explained in the Government's November 28, 2022 opposition letter (D.E. 109), Rule 15 allows for pretrial depositions in criminal cases only in "exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1).[1] The burden is on the defendant to establish that such exceptional circumstances exist and that injustice will result if the motion is denied. *See United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962); *see also United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994). Specifically, the defendant must show that "(1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001); *see also United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984).

*First*, as to unavailability, the mere fact that a purported witness resides in a foreign country does not demonstrate his or her "unavailability" for Rule 15 purposes. *United States v. Isaza-Zapata*, 101 F.3d 1393 (2d Cir. 1996) (citing *United States v. Ismaili*, 828 F.2d 153, 160 (3d Cir.

---

[1]   The Government incorporates by reference the analysis of relevant law set forth in its prior opposition letter, which is attached as Exhibit A.

1987) (holding that unavailability requirement not satisfied for witnesses residing in Morocco)). The defendant must make some showing that the foreign-based witness is truly unable or unwilling to come to the United States to testify and that the moving party has made a "good-faith effort to produce the person to testify at trial." *Johnpoll*, 739 F.2d at 709; *Isaza-Zapata*, 101 F.3d at 1393; *United States v. Pham*, 12 Cr. 423 (AJN), 2015 WL 7871348, at *1-2 (S.D.N.Y. Dec. 4, 2015) (explaining "[c]onclusory statements of unavailability . . . are insufficient") (internal citation omitted).

*Second*, as to materiality, the defendant must generally show, beyond "unsubstantiated speculation," that the testimony sought "exculpates the defendant." *Kelley*, 36 F.3d at 1125 (internal quotation marks and citation omitted) (affirming denial of depositions where anticipated testimony, although relevant, was not exculpatory); *see also United States v. Merritt*, 90 Cr. 767 (JSM), 1991 WL 79235, at *4 (S.D.N.Y. May 7, 1991) (denying Rule 15 deposition request where "the defendants have made no showing that the deponents' testimony would be exculpatory"). In other words, the testimony sought by the defendant should "challenge central aspects of the government's allegations" or "negate the crux" of the Government's case. *Pham*, 2015 WL 7871348, at *1-2 (citing *Ismaili*, 828 F.2d at 160). Furthermore, "[a] court does not abuse [its] discretion where it denies a Rule 15 motion because 'the evidence [is] in some respects irrelevant and in others cumulative and possibly inadmissible as hearsay.'" *United States v. Campbell*, 91 Cr. 1219 (RJD), 1998 WL 564376, at *1 (E.D.N.Y. June 30, 1998) (quoting *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1569-70 (9th Cir. 1989)).

*Third*, and finally, a district court must also consider whether significant "countervailing factors" exist that would render the taking of the requested deposition unjust. *See United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993); *United States v. Alexandre*, 22 Cr. 326 (JPC), 2022 WL 9843495, at *3 (S.D.N.Y. Oct. 17, 2022) (explaining "[w]hen the first two prongs of the exceptional-circumstances test are met, the third prong, necessity to prevent a failure of justice, is likely satisfied if there are no substantial countervailing factors militating against the taking of the deposition") (internal citations omitted).

## II. Discussion

The defendant's motion for a Rule 15 deposition should be rejected for substantially the same reasons the Government explained in its November 2022 opposition. (D.E. 109.) The only changed circumstances cited by the defendant—namely, his appearance before this Court and Blengio's subsequent deportation to Mexico—do not meet his burden of demonstrating exceptional circumstances.

### A. Unavailability

First, the defendant now asserts that Blengio has been removed from the United States following the completion of his federal narcotics trafficking sentence and is thus unavailable to testify at trial. As discussed above, residence in a foreign country does not alone establish unavailability. Although the defendant claims to have spoken with Blengio's Mexican attorney about his willingness to sit for a deposition in Mexico, he provides no other details to show a good faith effort to obtain Blengio's presence at trial. For instance, despite his claim that Blengio is "permanently barred from entering the United States," the defendant says nothing about whether Blengio would be willing to travel to the United States for trial, or whether Blengio would be

willing to (or did) seek consent to reapply for admission from the U. S. Citizenship and Immigration Services ("USCIS"). *See* USCIS Form I-212. The absence of these assertions illustrates acutely a primary concern with foreign depositions under Rule 15(a), and the reason why courts regularly deny such requests: foreign depositions do not provide for a realistic sanction for perjury. *See United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir. 1988) ("Foreign deposition testimony, because of the absence of a sanction for perjury, is suspect.") *cert. denied*, 486 U.S. 1026 (1988); *United States v. Oudovenko*, 00 Cr. 1014 (JG), 2001 WL 253027, at *3 (E.D.N.Y. Mar. 7, 2001) ("[E]ven if the witnesses in this case are placed under oath, the significance of that oath is diminished because there is no realistic perjury sanction."); *United States v. Feijoo-Tomala*, 751 F. Supp. 40, 43 (E.D.N.Y. 1990) ("[F]oreign deposition testimony, such as the defendant desires to take of her nieces in Ecuador, is suspect because it lacks the sanction of perjury." (citing *Alvarez*, 837 F.2d at 1029)). This concern is exacerbated here, where, as described below and in the Government's November 28, 2022 letter in opposition to the defendant's first request to depose Blengio, Blengio previously offered to sell his testimony regarding another drug trafficker in exchange for money. (D.E. 109 at 4.)

Accordingly, the defendant has failed to establish that Blengio is truly unavailable, and his motion can be rejected on this basis alone.

## B.  Materiality

Second, the defendant still cannot meet his burden of showing that Blengio's proposed deposition testimony is material. Critically, the proposed testimony does not exculpate the defendant or undermine the Government's allegations.

Indeed, on this score, nothing has changed since the Government's November 2022 opposition. According to the defense's proffered testimony, Blengio would testify as to the following facts that implicate the defendant as a co-conspirator:

- Blengio was an owner of a plane used for a large cocaine shipment that Blengio personally arranged and participated in. (D.E. 108-1 ¶ 5(a)-(b).)

- Blengio worked with multiple Venezuelan government officials and other co-conspirators to facilitate the drug shipment, and agreed to pay a bribe to the defendant "to ensure that their narcotics conspiracy continued to work smoothy." (*Id.* ¶ 5(c)-(f).)

- As part of the agreement to bribe the defendant, Blengio ultimately paid a bribe to someone he mistakenly believed was the defendant. (*Id.* ¶ 5(f)-(i).)

Additionally, Blengio has never spoken with the defendant and has never met him. (*Id.* ¶ 5(d).) Therefore, assuming the facts proffered by the defense are true, by this account Blengio lacks personal knowledge or any evidentiary foundation to provide non-speculative testimony regarding the defendant's conduct. *See Pham*, 2015 WL 7871348, at *2 (explaining a court "may properly deny" a Rule 15 motion when, among other things, the proposed testimony would be "inadmissible at trial"). The proposed testimony that Blengio understood the defendant to be a participant in the drug shipment scheme, but never met him, is hardly exculpatory, especially when high-ranking individuals like the defendant take steps to insulate themselves from criminal conduct. *See United States v. Dawson*, 425 F. 3d 389, 396 (7th Cir. 2005) ("Leaders rationally as

Hon. Alvin K. Hellerstein                                                           Page 4
October 31, 2023

well as selfishly seek to insulate themselves from the risks to which their underlings are exposed, because a leader is a scarcer commodity than a follower.").

Against that backdrop, the conclusions that the defense urges be drawn from Blengio's proffered testimony are speculative, at best, and, thus, clearly inadmissible. For example, the defense claims that it expects Blengio to testify that he believes he was tricked into giving money to someone he thought was the defendant. (D.E. 108-1 ¶ 5(i)-(j).) But, even by that account, Blengio has no personal knowledge of what happened to the money, or if he was, in fact, "tricked." As such, any attempt by Blengio to venture a belief as to where his bribe money went, or whether the defendant (who he does not even know) was involved in a specific drug transaction is clearly inadmissible personal opinion. *United States v. Kaplan*, 490 F.3d 110, 118-20 (2d Cir. 2007) (holding witness's lay opinion as to defendant's knowledge inadmissible without adequate foundation that it was rationally based on first-hand perceptions) (citing *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006) ("[O]pinion testimony of lay witnesses must be predicated upon concrete facts within their own observation and recollection—that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts.") (internal quotation marks omitted)).

Moreover, whether Blengio paid the bribe money to the defendant's emissary, or an imposter, is ultimately beside the point—Blengio agreed to pay a bribe to someone he believed was the defendant to facilitate a drug shipment. This is, of course, consistent with evidence that the Government proffered in its opposition last year, namely, that a witness is expected to testify that the defendant personally instructed another Venezuelan official and member of the Cartel de Los Soles, in sum and substance, that the other official needed to be prepared to intervene should law enforcement attempt to stop the 2006 cocaine shipment aboard the aircraft that Blengio claimed to own. And while the defendant may, with sufficient showing, argue at trial that other unnamed "people within the Venezuelan government used Carvajal's name to extract payments from drug dealers like Blengio" (D.E. 129 at 3), nothing in Blengio's purported testimony provides a colorable basis to support that assertion, particularly when—as explained above—Blengio never met the defendant and agreed, as part of his drug trafficking activities, to bribe him. *See United States v. Hendricks*, 921 F.3d 320, 331 (2d Cir. 2019) ("A court must be sensitive to the special problems presented by alternative perpetrator evidence and must ensure that the defendant shows a sufficient . . . nexus between the crime charged and the asserted alternative perpetrator.") (internal quotation marks and citations omitted).

Therefore, because the defendant has failed to establish that Blengio's testimony is material, his motion should be denied once again.

### C.  Interests of Justice

Finally, the defendant has also not shown that taking the deposition is necessary to prevent a failure of justice. The defendant has an obligation to "alert the district court to the substance of the evidence that is at peril of being excluded." *Pham*, 2015 WL 7871348, at *2 (internal citations omitted). As explained above, the conclusions the defendant seeks to draw from Blengio's proposed testimony are speculative and, thus, inadmissible. Additionally, Blengio's conduct with the U.S. Attorney's Office for the Southern District of Florida clearly demonstrates a track record of untruthfulness. *United States v. Castillo*, 568 F. App'x 774, 776 (11th Cir. 2014) (explaining the Government terminated Blengio's cooperation because, among other things, he "offered to sell

Hon. Alvin K. Hellerstein                                                           Page 5
October 31, 2023

his proposed testimony against a Mexican drug trafficker"); *see also* Brief for the United States, 2013 WL 5304252, at \*11 (11th Cir. Sept. 16, 2013) ("More troubling, it was learned that Mr. Blengio had offered to sell his testimony against the Mexican drug trafficker to others housed in the Federal Detention Center with him."). Indeed, the U.S. Attorney's Office for the Southern District of Florida explained that, through his conduct, "Mr. Blengio obstructed justice, impaired the ability of the government to prosecute cases in which they received information from him, created the opportunity for perjury and lied about his activities when questioned by law enforcement." Brief for the United States, 2013 WL 5304252, at \*11 (explaining Blengio's conduct "significantly impeded the mission of the United States"). Not only does this conduct further undermine the materiality of the proposed testimony, it also illustrates that the defense concerns about a "failure of justice" in denying the deposition are misplaced. (D.E. 129.)

## III.   Conclusion

For all of the reasons explained above, the Court should deny the defendant's renewed motion.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney


By:        /s/
           Nicholas S. Bradley
           Kaylan E. Lasky
           Kevin T. Sullivan
           Assistant United States Attorneys
           (212) 637-1581 / 2315 / 1587


Cc: Zachary Margulis-Ohnuma, Esq. (counsel for defendant) (by CM/ECF)


Enclosure (Exhibit A)