NB1fCARc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

　　　　　v.　　　　　　　　　　　　　　11 Cr. 205 (AKH)

HUGO ARMANDO CARVAJAL-BARRIOS,

　　　　　　　　Defendant.
　　　　　　　　　　　　　　　　　　　　Conference
------------------------------x

　　　　　　　　　　　　　　　　　　　　New York, N.Y.
　　　　　　　　　　　　　　　　　　　　November 1, 2023
　　　　　　　　　　　　　　　　　　　　12:00 p.m.

Before:

　　　　　　　　HON. ALVIN K. HELLERSTEIN,

　　　　　　　　　　　　　　　　　　　　District Judge

　　　　　　　　　　　APPEARANCES

DAMIAN WILLIAMS
　　　United States Attorney for the
　　　Southern District of New York
BY:　NICHOLAS BRADLEY
　　　KAYLAN E. LASKY
　　　KEVIN T. SULLIVAN
　　　Assistant United States Attorneys

ZACK MARGULIS-OHNUMA
TESS COHEN
　　　Attorneys for Defendant


Also Present:　Gabriel Mitre, Interpreter (Spanish)

1            (Case called; appearances noted)

2            THE COURT:  We have a motion to decide today and
3    perhaps a general status report on where the case is and where
4    it's going.  Let's do the motion first.

5            You want to speak on behalf of the motion, Mr.
6    Margulis-Ohnuma?

7            MR. MARGULIS-OHNUMA:  Sure.  Briefly, if I may.

8            THE COURT:  Take the podium, please.

9            MR. MARGULIS-OHNUMA:  I'm sorry?

10           THE COURT:  Take the podium.

11           MR. MARGULIS-OHNUMA:  Thank you, your Honor.

12           I guess now that Mr. Carvajal-Barrios is before the
13   Court, and the witness we want to depose has been deported to
14   Mexico and permanently excluded from the United States, the key
15   point, really, is whether the testimony he has would be
16   relevant, exculpatory, and in the interest of justice to take.

17           Let me explain that a little bit, if I may.  His name
18   is Fernando Blengio; he goes by a couple of other names.  The
19   case here centers on a plane that crashed in Campeche, Mexico,
20   in 2006, that was laden with drugs and had come from Venezuela
21   -- no dispute about any of that.

22           Fernando Blengio and many others have been prosecuted
23   in connection with that plane in many different jurisdictions.
24   We have asked for discovery about all of those prosecutions.
25   The government's theory is that my client had something to do

with allowing that plane to leave.  We adamantly deny that and would like to explore everything we can about how a plane with 5.6 tons of cocaine was able to leave Venezuela and crash in Mexico.

A person with crucial knowledge about that is the owner of the plane whose name is Fernando Blengio.  Fernando Blengio told us, and there's an affidavit to this effect that was submitted with our prior motion, that he was the owner of that plane and that he was told to pay bribes on behalf of somebody that he was led to believe was --

THE COURT:  I missed the word before bribes.

MR. MARGULIS-OHNUMA:  He was told by his Venezuelan partners in the drug-trafficking enterprise to pay bribes that would go to my client, to Hugo Carvajal.

He was personally --

THE COURT:  To do what, for what purpose?

MR. MARGULIS-OHNUMA:  To allow the plane to leave Venezuela.

Doesn't necessarily make a lot of sense, given my client's role in the government at the time, which was the head of military intelligence, really not much to do with the ports and other things that might have been affected, but this is his story.

He was told to pay the bribes and then he was deceived about who was ultimately getting the bribes.  And the way he

1   knows that is that when he went -- he was -- he had a personal
2   meeting with a person who claimed to be Hugo Carvajal, my
3   client.
4          At the time, my client had never been photographed in
5   the press; no one knew what he looked like.  And some time
6   later when his appearance did become public, my client realized
7   that the person he had paid was not Hugo Carvajal at all.
8          This testimony will support our -- I mean, at this
9   point I would call it more of a hypothesis than a theory, but
10  we, you know -- one possible line of defense, your Honor, for
11  us, is that all of these people claiming that they did things
12  in the name of Hugo Carvajal were actually doing things for
13  their own accord, without involving Hugo Carvajal at all.
14         And we do think we'll be able to present that, if we
15  do end up conceding that these things were being done in Hugo
16  Carvajal's name.
17         THE COURT:  But the government has to prove the case
18  against Mr. Carvajal.
19         I'm looking at the indictment.  It charges that
20  between 1999 and 2014, Carvajal and others coordinated
21  large-scale drug trafficking activities in Venezuela and
22  Columbia.
23         They've got to prove Carvajal's involvement.
24         MR. MARGULIS-OHNUMA:  Yes, and one of the acts they
25  allege -- and I don't have the indictment in front of me; I'm

sorry -- is that he protected this plane. And just to give a little history, your Honor, he was originally indicted in 2011 only with respect to the plane, the 2006 DC-9. That's a much more containable case.

This new case that indicts, among other people, the sitting president of the country of Venezuela, expands the liability going from 1999 to whatever year they ended, I think, 2021, and does not add to the number of specific drug shipments.

THE COURT: Perhaps I should hear from the government how they consider proving the case against Mr. Carvajal, and then come back to you and find out if what you want to find or elicit from Mr. Blengio is exculpatory, or potentially so.

MR. MARGULIS-OHNUMA: I think that would be very helpful.

THE COURT: Mr. Bradley.

MR. BRADLEY: Thank you, your Honor.

I'm happy to be heard on the motion in its entirety, and I certainly don't want to belabor the points in the government's opposition that we submitted yesterday, but as to directly respond to the Court's question, the proof that the government intends to introduce is not limited merely to one particular shipment.

He's charged with, among other things, participation in a cocaine importation conspiracy and a narco-terrorism

conspiracy. Certainly, one of the means and methods of that conspiracy included this 2006 plane shipment that resulted in the 5.6-ton cocaine seizure.

That particular limit to the government's testimony -- I should say proof as to that, I would expect that in addition to photographs and other materials regarding the seizure of the plane itself, the government would also expect to introduce, among other things, witness statements.

As the government noted in its submission, your Honor, yesterday, and then also last year when this first came up and this Rule 15 motion was first filed by the defendant, the government would expect to introduce, among other things, witness testimony that the defendant instructed another member of the *Cartel de los Soles*, a coconspirator, that he should be prepared to intervene in order to interdict or stop any law enforcement efforts with regard to the plane.

That protection, that dispatching of the plane is, among other things, what the defendant is accused of and what the government would seek to introduce at trial.

THE COURT: Now, go over that again for me.

How is Mr. Carvajal involved in that plane incident?

MR. BRADLEY: The government would expect, your Honor, that the defendant instructed a coconspirator, another member of the *Cartel de los Soles*, as alleged in the indictment, to be prepared to intervene to allow the plane to successfully take

NB1fCARc

1   off from Venezuela and to interdict or stop law enforcement
2   efforts to prevent that plane from leaving with the cocaine
3   shipment.
4            THE COURT:  Mr. Margulis-Ohnuma, how is Mr. Blengio's
5   proposed testimony going to counter this?
6            MR. MARGULIS-OHNUMA:  Because the coconspirators
7   didn't pay Mr. Carvajal.  They paid somebody else to do --
8            It's a question of identification.  They paid somebody
9   else to do the very task the government is blaming on my
10  client.  They didn't pay --
11           THE COURT:  How is Mr. Blengio going to say that?  How
12  do you know?
13           MR. MARGULIS-OHNUMA:  He's going to say, I had
14  partners in Venezuela.  The partners in Venezuela said we
15  should pay Carvajal.  I went to go pay somebody, and the guy
16  wasn't Carvajal.
17           THE COURT:  Is it Blengio who is going to say this?
18           MR. MARGULIS-OHNUMA:  Yes.
19           THE COURT:  He's going to say, I went to pay someone
20  and it wasn't Carvajal that I paid?
21           MR. MARGULIS-OHNUMA:  Correct.
22           THE COURT:  That's in the affidavit, that it was an
23  imposter.
24           Isn't that exculpatory, Mr. Bradley?
25           MR. BRADLEY:  I don't believe so, your Honor.

1          And to take a step back from -- what is reflected in
2  the affidavit, your Honor, is that Mr. Blengio -- who I should
3  note, has a long history, as the government noted, with the
4  Southern District of Florida, of obstructing justice and
5  offering to sell his testimony in exchange for money -- but
6  even taking what was represented in the affidavit at face
7  value, Mr. Blengio was represented to be an owner of the plane
8  that was used for this drug shipment, that he had worked with
9  multiple Venezuelan government officials in order to facilitate
10 that drug shipment, and that as part of working with his
11 co-conspirators, he had agreed to pay the defendant a bribe,
12 which, to quote the affidavit, to ensure that their narcotics
13 conspiracy continued to work smoothly.
14         THE COURT:  And that connection, assuming that what
15 Mr. Ohnuma is telling me is true, it doesn't hit the conspiracy
16 count.  If there's an agreement, even if the one person is
17 paid, there's still an agreement.
18         MR. BRADLEY:  Correct, your Honor.
19         THE COURT:  And that's a situation -- whatever the
20 testimony of actual bribing and actual people would be
21 irrelevant, as long as there's an agreement.
22         MR. BRADLEY:  Certainly, your Honor.
23         And obviously, there was no requirement.
24         THE COURT:  And if the wrong person was paid, it
25 doesn't change what the agreement was.

1           MR. BRADLEY:  Correct, your Honor.

2           And I would note that --

3           THE COURT:  Isn't that enough?

4           MR. BRADLEY:  I'm sorry?

5           THE COURT:  Isn't that enough?

6           MR. BRADLEY:  I believe so, your Honor.

7           THE COURT:  How do you deal with that, Mr. Ohnuma?

8           MR. MARGULIS-OHNUMA:  Well, there's a dispute about
9    whether the agreement was with Mr. Carvajal or with other
10   people, and Blengio's testimony is evidence that it was with
11   other people, not with Mr. Carvajal.  Somebody else committed
12   this crime.

13          THE COURT:  You told me just a minute ago that there
14   was a bribe to pay Carvajal so the airplane could leave
15   Venezuela and the wrong people got paid.

16          MR. MARGULIS-OHNUMA:  I told you that Blengio's
17   understanding was that money to be paid was supposed to go to
18   Carvajal and that it did not go to Carvajal.

19          THE COURT:  If you understood that it was supposed to
20   go to Carvajal that proves the agreement.

21          MR. MARGULIS-OHNUMA:  It does not, your Honor.  It
22   proves that somebody was using Carvajal's name and stealing the
23   money.

24          THE COURT:  Doesn't that say that, but there was an
25   agreement to pay that assumed name, meaning Carvajal?

1          If there's an agreement, it's not exculpatory.

2          MR. MARGULIS-OHNUMA:  If there's an agreement, it's
3  exculpatory.  Sorry.  If there's no agreement including
4  Carvajal, we deny the existence of an agreement that included
5  Carvajal.

6          What the person did was they claimed -- look, Carvajal
7  was the head of military intelligence at the time, so he was a
8  high government official who was well-known and he was close to
9  Hugo Chavez, the president of the country, so people were using
10  his name without his knowledge.

11          THE COURT:  If the witness understood that pay was to
12  go to Carvajal, he doesn't have exculpatory information.  No
13  matter whose, his understanding was as to actual payment.

14          Furthermore, what you're telling me is that he has
15  hearsay information.

16          MR. MARGULIS-OHNUMA:  No, I'm saying he has direct
17  information that it ultimately did not go to Carvajal.  His
18  understanding was it was supposed to go to Carvajal because he
19  was deceived by his partners.

20          Yes, the first step of his testimony --

21          THE COURT:  Stop there.

22          If he was deceived by his partners and told that it
23  was going to Carvajal and agreed to involve himself with
24  Carvajal, that's enough for conspiracy.

25          MR. MARGULIS-OHNUMA:  Against Blengio for sure, but

1    not against Carvajal, because Carvajal doesn't get the money.

2             THE COURT:  Where does Blengio's testimony fit?

3             I can't understand that.

4             MR. MARGULIS-OHNUMA:  Blengio's testimony shows that

5    other people other than Carvajal were getting the money and

6    were using Carvajal's name to deceive --

7             THE COURT:  How is there direct information of that?

8             MR. MARGULIS-OHNUMA:  Because he went to go give

9    somebody money that he thought was Carvajal.

10            THE COURT:  Stop there.

11            That he thought was Carvajal.  He went to give money

12   to someone he thought was Carvajal; that's what you said.

13            MR. MARGULIS-OHNUMA:  Correct.

14            THE COURT:  So that means that he had an understanding

15   that it was a conspiracy to bribe Carvajal.

16            MR. MARGULIS-OHNUMA:  And he is guilty on a one-sided

17   conspiracy theory.  Blengio is guilty of conspiracy.  He's not

18   on trial here; Carvajal is on trial.

19            If it turns out the person that I paid to protect my

20   load was not actually the person I thought I was conspiring

21   with, then the person I thought I was conspiring with is

22   innocent.  That's evidence that the jury can use to draw the

23   conclusion that Carvajal's name was used, but he wasn't

24   actually involved.

25            THE COURT:  I'm not persuaded.

1          I don't understand how Blengio's information absolves
2    Carvajal in the slightest.
3          MR. MARGULIS-OHNUMA:  If I could move on from the
4    question --
5          THE COURT:  Carvajal was supposed to have agreed,
6    according to this theory I'm getting, to stop the plane from
7    flying, and he was induced to do so by a bribe.  And Blengio is
8    saying that I was intending to bribe Carvajal, but by mistake,
9    we bribed the wrong people.
10         MR. MARGULIS-OHNUMA:  Right; I never bribed Carvajal.
11         THE COURT:  But the agreement was there.
12         MR. MARGULIS-OHNUMA:  But, your Honor, it goes a
13   little beyond that.  The trial is a search for truth; we can
14   all agree on that.  And the truth is, this is the owner of the
15   plane who has testimony.
16         The government is going to dispute how much weight to
17   give the testimony and whether he is a truthful person or not,
18   but there's no real dispute, I don't think, because we have
19   some discovery indicating that this guy Blengio is the owner of
20   the plane.
21         THE COURT:  Why does the ownership of the plane
22   matter?
23         MR. MARGULIS-OHNUMA:  Because he's the person, well --
24   look, it's a complex conspiracy.  It involves a lot of people.
25   The first step is, you need a plane to drive drugs into Mexico.

1           He is also the man on the ground for the Mexican
2  cartel, I think it's the Mexican cartel, the owners of the
3  drugs in Venezuela.  So we're going to go into a lot of detail
4  in the trial about the mechanics of this particular shipment.
5           This is a person who can't come to the United States,
6  because he's permanently excluded, who has lots of information
7  about the one specific act that my client is accused of in the
8  indictment.
9           So even if it turns out that I don't want to use the
10 testimony at the end of the day because, as you say, it shows
11 that Carvajal's name was batted around a lot and it's too much,
12 and the government wants to use it because they're proving that
13 up, I'm willing to take that risk.
14          I think that in order to find the truth here, your
15 Honor, we need to get this person's testimony about how this
16 plane was allowed to leave Venezuela.
17          THE COURT:  Rule 15.
18          MR. MARGULIS-OHNUMA:  And the fact of the matter is,
19 he can testify that it was allowed to leave Venezuela because
20 he paid somebody other than Carvajal.
21          THE COURT:  Rule 15 is not a discovery rule.
22          It's a --
23          MR. MARGULIS-OHNUMA:  I'm not asking for discovery,
24 your Honor.  I'm asking to preserve the testimony so we can
25 present it to the jury so the jury has an opportunity to hear

1    it.

2         THE COURT:  That's not what you just said.

3         MR. MARGULIS-OHNUMA:  I'm sorry?

4         THE COURT:  That's not what you just said.

5         MR. MARGULIS-OHNUMA:  Let me repeat -- I'm sorry if I
6    wasn't clear.

7         THE COURT:  I'm not understanding what is the
8    testimony that you propose to elicit from Mr. Blengio that
9    would be relevant and admissible in the case involving
10   Carvajal.

11        MR. MARGULIS-OHNUMA:  Very simply, that he was in
12   charge of paying Venezuelans to get the plane to leave and that
13   it turned out that Carvajal, he learned later, was not one of
14   the Venezuelans who got paid for the plane to leave.  Very
15   simple.

16        THE COURT:  So you're saying --

17        MR. MARGULIS-OHNUMA:  From that, I will argue that
18   other Venezuelans used Carvajal's name.  And that's why we're
19   here, but that doesn't mean that Carvajal agreed to let his
20   name be used for that.

21        THE COURT:  I hold that it's not material.

22        There's no understanding that I have from anything
23   you've said that Blengio has material information.

24        I agree with you that he can't be as a witness to,
25   because he can't come into the country unless there's a

1    it.

2         THE COURT:  That's not what you just said.

3         MR. MARGULIS-OHNUMA:  I'm sorry?

4         THE COURT:  That's not what you just said.

5         MR. MARGULIS-OHNUMA:  Let me repeat -- I'm sorry if I
6    wasn't clear.

7         THE COURT:  I'm not understanding what is the
8    testimony that you propose to elicit from Mr. Blengio that
9    would be relevant and admissible in the case involving
10   Carvajal.

11        MR. MARGULIS-OHNUMA:  Very simply, that he was in
12   charge of paying Venezuelans to get the plane to leave and that
13   it turned out that Carvajal, he learned later, was not one of
14   the Venezuelans who got paid for the plane to leave.  Very
15   simple.

16        THE COURT:  So you're saying --

17        MR. MARGULIS-OHNUMA:  From that, I will argue that
18   other Venezuelans used Carvajal's name.  And that's why we're
19   here, but that doesn't mean that Carvajal agreed to let his
20   name be used for that.

21        THE COURT:  I hold that it's not material.

22        There's no understanding that I have from anything
23   you've said that Blengio has material information.

24        I agree with you that he can't be as a witness to,
25   because he can't come into the country unless there's a

1   specific arrangement that the government wants to make, and the
2   government's not saying it will do that.  So for all intents
3   and purposes, he can't attend trial; he can't be subpoenaed to
4   come to trial.
5              But, I don't see that his testimony is material or
6   that there's any public interest in conducting his deposition.
7              Okay.
8              MR. MARGULIS-OHNUMA:  Thank you, your Honor.
9              THE COURT:  Mr. Bradley, where are we now in this
10  case?
11             MR. BRADLEY:  Thank you, your Honor.  This is our
12  second pretrial conference.  We were last before the Court in
13  July, which is shortly after the defendant was presented in
14  this district.
15             Since that July conference, the government has made
16  seven discovery productions.  It's approximately 700 gigabytes
17  of discovery.
18             We are in the process of responding to a discovery
19  demand letter that was provided to us by defense counsel on
20  October 19.  We are going to try to work with him on those
21  discovery demands.  In addition to that, I understand that
22  defense counsel may, among other things, file a motion for a
23  bill of particulars.
24             On the classified discovery front, the government does
25  believe we will need to file a motion for protective order,

1  pursuant to Section 4 of the Classified Information Procedures
2  Act.  Our review of those materials is ongoing.
3           I also understand that as of this morning, defense
4  counsel's security clearance application is still pending.
5           What I would respectfully propose to the Court, your
6  Honor, is that we come back here in approximately 45 days, at
7  which point the government will be ready to propose a schedule
8  for a CIPA briefing before the Court as well as a Schedule 12
9  pretrial motion schedule.  I believe that would be largely
10 consistent with past practice in terms of CIPA, particularly
11 given that the defendant was first brought to this district
12 approximately three months ago.
13          THE COURT:  What's your perspective, Mr.
14 Margulis-Ohnuma?
15          MR. MARGULIS-OHNUMA:  I appreciate that, your Honor.
16          It's true that, as far as I know, we have not been
17 approved for security clearance yet, and the government has
18 been responsive and engaged with us on discovery issues.
19          I've never seen a bill of particulars granted in this
20 district.  Maybe there's a first time for everything, but I'm
21 not really planning to file for one.  So I think 45 days to
22 continue discovery at this point would be acceptable, and we
23 would waive time.
24          I do want to emphasize that we want to move very
25 quickly to trial, so setting a trial date at that conference

1  and motion dates at that conference probably would make sense.
2              As you're aware, the client is basically in exile from
3  Venezuela since 2019, having broken with the Maduro regime.
4  His family is thousands of miles away; he doesn't have any
5  family here in the United States.
6              THE COURT:  When you're ready for trial, you'll have
7  it.
8              MR. MARGULIS-OHNUMA:  So, 45 days is fine.
9              THE COURT:  Okay.
10             Brigitte.
11             THE DEPUTY CLERK:  December 12 at 10.
12             MR. MARGULIS-OHNUMA:  One moment, please.
13             That's fine, your Honor.
14             MR. BRADLEY:  Works for the government, your Honor.
15             THE COURT:  Motion?
16             MR. BRADLEY:  Yes, your Honor.
17             The government would respectfully move to exclude time
18 between today's date and December 12, 2023, pursuant to the
19 Speedy Trial Act, Title 18 of the U.S.C. Section 3161(h)(7)(A).
20             The government would respectfully submit that the
21 proposed exclusion of time would serve the ends of justice so
22 the government could continue to complete its production of
23 discovery, so that the parties can engage on any potential
24 discovery issues, and so that defense counsel can evaluate that
25 discovery with an eye toward potential motion practice.

1          THE COURT:  Without objection, so ordered.
2          Okay, folks.
3          Thank you.
4          MR. MARGULIS-OHNUMA:  Thank you, your Honor.
5          MR. BRADLEY:  Thank you, your Honor.
6          (Adjourned)