NCC1CARC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                           11 Cr. 205 (AKH)

HUGO ANTONIO CARVAJAL BARRIOS,

              Defendant.          Conference
------------------------------x

                                 New York, N.Y.
                                 December 12, 2023
                                 10:11 a.m.


Before:

                  HON. ALVIN K. HELLERSTEIN,

                                 District Judge


                      APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  NICHOLAS S. BRADLEY, ESQ.
     Assistant United States Attorney

ZMO LAW PLLC
     Attorneys for Defendant
BY:  ZACHARY MARGULIS-OHNUMA, ESQ.
     TESS M. COHEN, ESQ.

ALSO PRESENT:  MATTHEW PASSMORE, Special Agent, DEA
                CAMILA MATAMOROS, Paralegal, ZMO Law, PLLC
                HUMBERTO GARCIA, Interpreter (Spanish)

NCC1CARC

| 1 | (Case called) |

2          THE DEPUTY CLERK:  Counsel, please state your

3    appearance for the record.

4          MR. BRADLEY:  Good morning, your Honor.  Nicholas

5    Bradley for the government.  I'm also joined at counsel table

6    by Special Agent Matthew Passmore of the DEA.

7          SPECIAL AGENT PASSMORE:  Good morning, your Honor.

8          THE COURT:  Good morning.

9          MR. MARGULIS-OHNUMA:  I'm Zachary Margulis-Ohnuma,

10   353 Lexington Avenue.  I represent Hugo Carvajal, who is seated

11   next to me.  I'm joined at counsel table by our bilingual

12   paralegal, Camila Matamoros, and by my partner Tess Cohen.

13   Good morning.

14         THE COURT:  Good morning.  How do I call you,

15   Mr. Margulis or Mr. Ohnuma?

16         MR. MARGULIS-OHNUMA:  Just Margulis is fine.

17         THE COURT:  Mr. Bradley, what's the schedule for

18   today?

19         MR. BRADLEY:  Thank you, your Honor.  So this is our

20   third pretrial conference.  At our last conference—

21         THE COURT:  You can take the podium because you're

22   blocking Mr. Margulis.

23         MR. BRADLEY:  Of course, your Honor.

24         Thank you, your Honor.  This is the third pretrial

25   conference in this matter.  As the government noted at the last

NCC1CARC

conference, the government has produced a substantial amount of

discovery in this case that's in its possession.  There have

been seven discovery productions, approximately 700 gigabytes

of discovery.

I'd like to propose two updates to the Court as a path

forward, from the government's perspective.  The first is the

government and defense counsel have continued to discuss some

outstanding discovery requests that Mr. Margulis has brought to

the government's attention.  Some of those are discrete; some

of those are a little more broad, focusing on, among other

things, documents that are held by other U.S. Attorney's

offices.  We're trying to narrow those areas of dispute, your

Honor.  I anticipate that that will likely result in some sort

of motion practice before the Court.

On that score, your Honor, what I would propose as a

path forward is that we set another status conference in

approximately 30 days, and to the extent that there are

outstanding items remaining regarding a discovery dispute, we

could set a briefing schedule there, and presumably at that

point Mr. Margulis would be able to consolidate any other

Rule 12 motions he would be able to make.

On the classified discovery front, your Honor, as the

government noted when we were last before the Court in

November, our review was and continues to be ongoing.  There is

a substantial amount of materials for the government to review.

NCC1CARC

1    The Court may be aware that the defendant Cliver, who is also

2    before the Court on this docket, had another——had a classified

3    discovery component as well, and there was a Section 4

4    protective order under CIPA filed in that case.  The government

5    expects to seek a protective order under Section 4 of CIPA in

6    this case with regard to defendant Carvajal.  If the Court is

7    inclined and amenable, we would propose——and I think it would

8    be consistent with past practice before this Court and also

9    some other recent examples——that the Court set a Section 4

10   deadline in approximately five to six months while we

11   simultaneously address Mr. Margulis's nonclassified discovery

12   concerns at a status conference in approximately 30 days.

13            THE COURT:  How is all of this consistent with my

14   obligation to give you a speedy trial?

15            MR. BRADLEY:  I'm sorry, your Honor?

16            THE COURT:  How is all of this consistent with my

17   obligation to give you a speedy trial?

18            MR. BRADLEY:  Well, your Honor, as an initial matter——

19            THE COURT:  What kind of procedures could we develop

20   to hasten the day of trial?

21            MR. BRADLEY:  Well, your Honor, as an initial

22   matter——as an initial matter, the government has produced a

23   substantial amount of discovery in this case.  It sounds like——

24            THE COURT:  Don't tell me what you've done.  We are

25   here.  What can we do to hasten the day of trial?

NCC1CARC

1          MR. BRADLEY:  Well, as one matter, your Honor, would

2    be to put any Rule——I very much expect that Mr. Margulis will

3    seek to file motions in this case under Rule 12.  I think that

4    proceeding in parallel track would be one way to make sure that

5    we are hastening a trial in this case.

6          THE COURT:  How can he make the motion without getting

7    full discovery?

8          MR. BRADLEY:  Well, with regard to classified

9    discovery, your Honor, the defendant would be able to——you are

10   right, your Honor, that there are, to some extent, areas of

11   overlap.  However, with regard to CIPA practice, the defendant

12   would have the ability——we would be able to set a schedule

13   under Section 5 and Section 6 of CIPA regarding any classified

14   discovery that may be produced in this case and whether it

15   would be used and whether it would be admissible at trial.

16   That would be separate and apart from any Rule 12 motion that

17   Mr. Margulis would make.

18         THE COURT:  Let me get Mr. Margulis's take on all of

19   this and then we'll try to figure something out.

20         MR. BRADLEY:  Thank you, your Honor.

21         MR. MARGULIS-OHNUMA:  Thank you, Judge.  Can you hear

22   me from here?

23         THE COURT:  I can.  You can stay where you are.

24         MR. MARGULIS-OHNUMA:  So in my view, discovery has

25   gone unacceptably slowly.  It's true that a large volume was

NCC1CARC

```
 1    initially turned over.  It lacked what I've identified as nine
 2    discrete DEA files.  Well, actually, one of them was included,
 3    but several of——much of the material that I need under Rule 16
 4    and also under Brady was not included in those initial
 5    disclosures.  As a result, on October 19th, I wrote a detailed
 6    letter to the government, with specific requests, and we
 7    haven't been able to talk about it sufficiently.  So——
 8             THE COURT:  Why not?
 9             MR. MARGULIS-OHNUMA:  I mean, Mr. Bradley was away;
10    the other members of the team were on trial.  We——I'm not
11    getting what I consider to be a direct answer about——
12             THE COURT:  Should you talk about it now?
13             MR. MARGULIS-OHNUMA:  Well, I want to give Mr. Bradley
14    the benefit of the doubt.  I think if we come back in 30 days
15    and he really gets a chance to huddle with his team about the
16    review of related cases, I mean, the fundamental problem is
17    that they charged——
18             THE COURT:  I'll do what you want.
19             MR. MARGULIS-OHNUMA:  I appreciate it.
20             THE COURT:  I'll let you know that I'm interested in
21    hastening the day of trial.  So if you need 30 days, then we'll
22    do 30 days.
23             MR. MARGULIS-OHNUMA:  I think 30 days——
24             THE COURT:  If you want to raise the issues today,
25    I'll hear them.
```

NCC1CARC

1      MR. MARGULIS-OHNUMA:  Yes.  I think 30 days, with a

2  very clear admonition to the government that we're going to

3  need specific responses to our requests before then so we'll be

4  ready to set a tight——you know, a short motion schedule on the

5  discovery issues at that time.

6      THE COURT:  Have you looked at these discrete issues,

7  Mr. Bradley?

8      MR. BRADLEY:  I have, your Honor, and I have spoken to

9  Mr. Margulis about these points as well.  I've also asked some

10  detailed follow-up questions, so——

11      THE COURT:  Are you ready for a ruling now?

12      MR. BRADLEY:  No, your Honor.  I think we would like

13  to try to narrow areas of dispute before presenting anything to

14  the Court regarding discovery.  As I mentioned to Mr. Margulis

15  and to the Court, we've produced almost 700 gigabytes of

16  discovery, including from other cases.

17      THE COURT:  Stop praising yourself for what you've

18  done.  I'm interested in what we have to do.

19      MR. BRADLEY:  Understood, your Honor.

20      THE COURT:  So don't tell me any more about what

21  happened.

22      How about having two weeks to have your discussions

23  and then a motion, so that in a month, we'll come back and I'll

24  make rulings?

25      MR. BRADLEY:  That's fine from the government's

NCC1CARC

1    perspective, your Honor.

2            THE COURT:  Why don't you huddle up with Mr. Margulis

3    now and come back and give me a briefing schedule.

4            MR. BRADLEY:  Right now, your Honor?

5            THE COURT:  Yes.

6            MR. BRADLEY:  Okay.

7            THE COURT:  Off the record.

8            (Counsel conferring)

9            MR. MARGULIS-OHNUMA:  Your Honor, I've just consulted

10   with Mr. Bradley.  I think that there was a misunderstanding

11   about the scope of the government's review that may have

12   suggested that the dispute was broader than it actually is, and

13   that is, it wasn't clear to me whether or not Mr. Bradley had

14   given us all of the information, DEA files related to the nine

15   names and cases that I identified.  He's now saying he's not

16   sure he has but that it will take a week or two for the team to

17   meet and figure out which of those files we already have, and I

18   understand that.  So I guess I would like to, giving the

19   government the benefit of the doubt, not set a briefing

20   schedule at this time.  If we could come in for another status

21   conference in 30 days.  I'm okay with that.

22           THE COURT:  I'll give you the status conference in 30

23   days, but what is it that we have to do on the 30th day?

24           MR. MARGULIS-OHNUMA:  We have to complete discovery,

25   which means putting in my hands the discoverable material from

NCC1CARC

these nine related cases, and the issue is, they're cases that
were brought around the country.  There are several——so just so
you understand so it's not mysterious what we're talking about,
there was this plane that crash landed in Campeche in 2006.
Many, many people have been prosecuted in connection with that
plane, including now my client, General Carvajal.  So those, to
my mind, are highly related.  It's part of a vast conspiracy
that he wasn't a part of, but it's already been prosecuted, and
there's a lot of information out there.  So what I'm trying to
get the government to focus on is their obligation to provide
both Rule 16 and *Brady* related to other people involved in that
particular transaction.  And again, I've identified nine
specific cases that relate to that.  I've also identified
several other areas, based on the indictment, the S1
indictment, where it doesn't appear to me that they've given me
complete discovery in those areas.  So I think Mr. Bradley has
heard that; he's going to go back to his team——I don't want to
speak for him, but what I understand is that he's going to go
back to his team, he's going to make sure that all of those
things have been thoroughly looked at in the DEA files, and
then there may be a remaining dispute as the U.S. Attorney's
office have separate files based on conversations with
witnesses in those cases, and that's what we would address in
30 days, having hopefully resolved the scope of the DEA files
before that.

NCC1CARC

1              THE COURT:  Mr. Bradley?

2              MR. BRADLEY:  I think I agree in general with what

3     Mr. Margulis said.  I think we would like to make sure that any

4     dispute we bring before the Court is narrowed, and obviously in

5     the interim Mr. Margulis would be reviewing the discovery that

6     the government has produced.  So what I would anticipate and

7     expect, your Honor, is that at that 30th day, we could come to

8     the Court and say that we need a briefing schedule for any

9     potential outstanding discovery dispute and any other Rule 12

10    motion that Mr. Margulis would like to make.

11             MR. MARGULIS-OHNUMA:  I just want to correct the

12    government.  I've already reviewed what they've provided.

13    We're ready to go on that.

14             THE COURT:  I'm kind of a prisoner of what you fellows

15    are doing.

16             MR. MARGULIS-OHNUMA:  Sorry.

17             THE COURT:  I can't intrude.  All I can do is urge you

18    to hasten the process.

19             What's 30 days, Brigitte?

20             THE DEPUTY CLERK:  January 13?

21             THE COURT:  You've got the Christmas holidays.

22    Nothing is going to happen during the Christmas holidays.

23             MR. MARGULIS-OHNUMA:  That's fine.  I would like to

24    address also the time——

25             THE COURT:  I don't want to get another adjournment.

NCC1CARC

1              THE DEPUTY CLERK:  January 17th at 10:30?

2              THE COURT:  That's better.

3              MR. MARGULIS-OHNUMA:  Yes.

4              MR. BRADLEY:  That works for the government, your

5    Honor.

6              THE COURT:  January 17th, 10:30.

7              And what are we going to do then, Mr. Bradley?  Let's

8    outline what we can expect to do on January 17th at 10:30.

9              MR. BRADLEY:  Your Honor, I'd expect that, to the

10   extent that we are going——we have any——I think what we can do,

11   your Honor, is bring to the Court's attention any remaining

12   discovery disputes that Mr. Margulis has brought to the

13   government's attention and, if necessary, we can set a briefing

14   schedule on that 30th day.

15             THE COURT:  Can't I get the benefit of your briefs so

16   I can make rulings on January 17?

17             MR. BRADLEY:  Well, I believe, your Honor, that it

18   might be prudent to wait until January 17th so we can at least

19   present the Court with——at least advise the Court whether we

20   believe that there will be any areas of dispute.  As

21   Mr. Margulis said, I think we're working as expeditiously as we

22   can to make sure that they're narrowed.

23             THE COURT:  And what about the secret documents?

24             MR. BRADLEY:  We're working on those, your Honor, as

25   expeditiously as possible.  As I mentioned, it is a significant

NCC1CARC

1    volume.

2              THE COURT:  Remind me the procedures that have to go

3    with these.  You're reviewing them for relevance, right?

4              MR. BRADLEY:  Correct, your Honor.

5              THE COURT:  And once you fix on that, what happens

6    next?

7              MR. BRADLEY:  At that point, your Honor, going——at

8    that point, your Honor, the government would identify the

9    universe of documents that, in the government's view, would

10   either potentially be discoverable, would either potentially be

11   candidates for substitution, or candidates for deletion, and

12   which the government would present to the Court in a proposed

13   *ex parte* motion for a protective order under Section 4 under

14   the Classified Information Procedures Act.

15             THE COURT:  Does the defendant play any role in this?

16             MR. BRADLEY:  No, your Honor.  After the Court rules

17   on that Section 4 motion and protective order, any classified

18   discovery that would be contemplated by that order would then

19   be promptly produced to Mr. Margulis and his team, they would

20   review it, and then the parties would propose a schedule under

21   Section 5 and Section 6 of CIPA, which would litigate issues

22   related to whether and to what extent any of those classified

23   materials produced in discovery would be admissible at trial.

24             THE COURT:  And in your estimation, how long will a

25   pretrial discovery phase last?

NCC1CARC

1          MR. BRADLEY:  Well, from the government's perspective,

2     we can move very quickly with regard to Section 5 and Section 6

3     of CIPA.  As the Court knows from prior cases, with regard to

4     seeking the protective order, there are other government

5     components that unfortunately the government can only do so

6     much with regard to equity holders and other stakeholders and

7     the timing that they have.

8          So looking just to past examples, your Honor, for

9     example, with Cliver, it took approximately five months from

10     the setting of the Section 4 schedule to the date that the

11     Section 4 was actually filed.  With regard to another case

12     before Judge Engelmayer, there was a case, *Bradley and Muthana*;

13     that was a schedule that was set under Section 4 in November of

14     2021.  That Section 4 protective order was not able to be filed

15     until April 1st of 2022, so approximately five months.

16          I should note, your Honor, that we expect that the

17     amount of materials that are being reviewed here are more

18     voluminous than Cliver.  The government is obviously working as

19     fast as possible.  We have just as much of an interest in

20     bringing this case to trial as well.

21          THE COURT:  So from this date, which is

22     December 12th——

23          MR. BRADLEY:  Correct.

24          THE COURT:  ——when do you think we'll be finished with

25     pretrial discovery?

NCC1CARC

```
 1          MR. BRADLEY:  Well, with regard to the nonclassified
 2   materials, your Honor——
 3          THE COURT:  Everything.
 4          MR. BRADLEY:  Everything.  Well, to some extent, your
 5   Honor, it's going to depend on whether——the timing for the
 6   Court to review and then approve, if necessary, the Section 4
 7   order, but from the government's perspective, from what the
 8   government can do, we expect that the filing of the Section 4
 9   will be the completion of the government's component of the
10   discovery.  Obviously then we would have to turn over any
11   classified discovery contemplated by that order afterward.  I
12   would expect, your Honor, from the government's perspective,
13   that we would ask for approximately five to six months from
14   today's date in order to have that Section 4 motion.
15          THE COURT:  All right.  So you think for my planning
16   purposes, by June or July, the pretrial will be finished and
17   we'll be ready for trial.
18          MR. BRADLEY:  I believe so, your Honor, yes.  I mean,
19   that would obviously be subject to any Section 5 and Section 6
20   practice that we would set a briefing schedule for——
21          THE COURT:  It's subject to a lot of things.  Okay.
22          All right.  So probably in March we should be choosing
23   trial dates.
24          MR. BRADLEY:  Well, from the government's perspective,
25   your Honor, I think that the government and I think obviously
```

NCC1CARC

1    defendants would want the benefit of any classified discovery——

2            THE COURT:  I understand.  So I'm giving you a target,

3    that we're finishing this pretrial phase of the case in July,

4    by July.  Get the work done.

5            MR. BRADLEY:  Yes, your Honor.  With that in mind,

6    your Honor, can we propose, for example, June 1st as a date for

7    the government to file its Section 4 motion?

8            THE COURT:  I don't know why it would take so long.

9            MR. BRADLEY:  Well, as I mentioned, your Honor——

10           THE COURT:  I'd rather set it the next session so you

11   know what you're doing.

12           MR. BRADLEY:  Yes, your Honor.

13           THE COURT:  And I hope it doesn't come to June 1st.  I

14   hope we get a date in March, or earlier.  I want you to work on

15   this case.  That's all I'm trying to do, Mr. Bradley.  I know

16   you have a lot of things to do, but I want you to work on this

17   case.

18           MR. BRADLEY:  Of course, your Honor.  One thing I

19   would note, your Honor, and I think we have——

20           THE COURT:  This case was filed in 2011.

21           MR. BRADLEY:  That's correct, your Honor.

22           THE COURT:  So technically it's 12 years old.  How old

23   is it practically with Mr. Carvajal?

24           MR. BRADLEY:  Oh, well, he was presented in this

25   district in July of this year, your Honor, after he was

NCC1CARC

1    extradited.

2            THE COURT:  All right.

3            MR. BRADLEY:  And your Honor, as——

4            THE COURT:  So we have a new date, January 17.  Is

5    there a motion?

6            MR. BRADLEY:  Yes, your Honor.  The government would

7    respectfully ask that the Court exclude time under the Speedy

8    Trial Act between today's date and January 17th, under Title 18

9    of the United States Code, Section 3161(h)(7)(A).  The

10   government would respectfully submit that the proposed

11   exclusion of time would serve the ends of justice so that the

12   parties can continue their discussions regarding a potential

13   motion practice, so defense counsel can evaluate potential

14   motion practice, and so that the government can complete its

15   review and production of discovery.

16           THE COURT:  Without objection?

17           MR. MARGULIS-OHNUMA:  No objection, your Honor.

18           THE COURT:  So ordered.

19           MR. MARGULIS-OHNUMA:  I would like to be heard with

20   respect to the classified discovery, though?

21           THE COURT:  Yes.

22           MR. MARGULIS-OHNUMA:  If I heard the government

23   correctly, they have to interact with other branches of the

24   government in order to get these things classified——you know,

25   to get their input on the position for their protective order.

NCC1CARC

| 1 | And it sounds to me like what triggers that process is the |

1    And it sounds to me like what triggers that process is the

2    setting of——internally, in the government, is the setting of

3    the schedule.  So my proposal would be to set March 1st as the

4    deadline for the CIPA protective order.  If they don't make it

5    and they have to ask for more time, they have to tell you why.

6    That's my first application would be March 1st for the CIPA

7    protective order under Section 4 of CIPA.

8              My second application would be to be heard *ex parte*,

9    both in briefing and in a conference, which I believe was the

10   procedure that your Honor used with co-defendant Cliver Alcala,

11   so that we can explain, you know, have some input into why

12   certain items are exculpatory and necessary to the defense.

13             Those are my two applications.

14        THE COURT:  I think that's correct.  Okay.  You keep

15   advising me as we go along, and to the greatest extent, I will

16   have you participate in the process.

17        MR. MARGULIS-OHNUMA:  Thank you.

18        THE COURT:  Okay.  See you January 17.

19        MR. MARGULIS-OHNUMA:  But, your Honor, could we set

20   the March 1st as their deadline so that they can get the ball

21   rolling with the agencies?  That's what I'm concerned about.

22        THE COURT:  Deadline for what?

23        MR. MARGULIS-OHNUMA:  For them to file a CIPA Rule 4

24   protective order.

25        THE COURT:  Mr. Bradley?

NCC1CARC

1    MR. BRADLEY:  Your Honor, as the government noted, I

2    think it would be more appropriate to set a date in the five-

3    to six-month range just based on past experience.

4    THE COURT:  I'll set a date next conference.

5    MR. MARGULIS-OHNUMA:  That's fine, your Honor.

6    MR. BRADLEY:  To be clear with Mr. Margulis's point,

7    the government is working on this, and we don't need to have a

8    date before we start working on it.

9    MR. MARGULIS-OHNUMA:  If the government's been working

10   on it, then they've been working on it since last July, and

11   they've already had five months, so if they need more than

12   three more months, I think they should have to explain why.

13   And a big part—my understanding was the reason for the delay

14   was because Ms. Cohen and I didn't have our top secret security

15   clearance.  We now have it.  I expected to have secret

16   documents already.  And I'm afraid that they're going to come

17   back next month and say, well, we need five months from today

18   because we just set the schedule, like in the other cases.

19   MR. BRADLEY:  Your Honor, I think it would be

20   appropriate to address this at the next conference, as the

21   Court previously ruled.

22   THE COURT:  What is it that you want to happen on

23   March 1, Mr. Margulis?

24   MR. MARGULIS-OHNUMA:  That that be the deadline for

25   them to file the protective order under Section 4 of CIPA.

NCC1CARC

1      THE COURT:  What does that protective order do?

2      MR. MARGULIS-OHNUMA:  It——the government can explain

3  better than I.

4      MR. BRADLEY:  Yes, your Honor.  The motion under

5  Section 4 of CIPA——

6      THE COURT:  Louder, please.

7      MR. BRADLEY:  Yes.

8      THE COURT:  Speak louder.

9      MR. BRADLEY:  I am, your Honor.  Thank you.  Thank you

10  for letting me know.

11      Your Honor, the motion under Section 4 of CIPA would

12  be for a protective order that would allow the——that would do

13  three things:

14      First, it would address matters related to whether the

15  Court should delete certain——make a ruling that the Court

16  should delete certain parts of discovery that are classified,

17  as it's entitled to do at the government's application.

18      THE COURT:  It's something you can't do until you've

19  completed your reviews.

20      MR. BRADLEY:  That's correct, your Honor.

21      THE COURT:  And that's what we're talking about.

22      All right.  So why don't I give you till the end of

23  April.

24      MR. BRADLEY:  That would be April 30, 2024, your

25  Honor?

NCC1CARC

1          THE COURT:  Yes.

2          MR. BRADLEY:  Your Honor, I'd respectfully ask for at

3   least one month more time on that.

4          THE COURT:  How much?

5          MR. BRADLEY:  At least one more month, and the reason

6   for that is, just based on the Cliver case, that took

7   approximately five months from the beginning, the setting of

8   the schedule, to the actual filing of the Section 4.  And

9   that's not just because the government takes too long.

10          THE COURT:  Let's do this.  I'm not making any date

11   now.  January 17, you'll report progress.  At that time I'm

12   going to set a date.

13          MR. BRADLEY:  Yes, your Honor.

14          THE COURT:  And it should be before June.

15          MR. BRADLEY:  Yes, your Honor.

16          THE COURT:  If possible.

17          Okay.  I think we're finished.  Happy holidays,

18   everybody.

19          MR. BRADLEY:  Thank you.

20          MR. MARGULIS-OHNUMA:  You too.  Happy holidays.

21                              o0o

22

23

24

25