UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 11 CR 205 (AKH)

HUGO ARMANDO CARVAJAL BARRIOS,

Defendant.

------------------------------x

New York, N.Y.
January 18, 2024
12:00 p.m.

Before:

HON. ALVIN K. HELLERSTEIN,

District Judge

APPEARANCES

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
NICHOLAS BRADLEY
KAYLAN LASKY
Assistant United States Attorney

ZACK MARGULIS OHNUMA
Attorney for Defendant Barrios

ALSO PRESENT: UMBERTO GARCIA, Spanish Language Interpreter

CRISTINA WEISZ, Spanish Language Interpreter

(Case called)

MR. BRADLEY: Good afternoon, your Honor.

Nicholas Bradley, for the government. I'm joined at counsel table, along with Kayla Laskey. Also at counsel table is Kevin Nuttley, from the Counterterrorism Section of the National Security Division of the Department of Justice.

THE COURT: Good afternoon, all.

MR. MARGULIS OHNUMA: Zachary Margulis Ohnuma.

Good afternoon, your Honor. I represent Hugo Carvajal Barrios, who is seated to my immediate right. I am joined at counsel table by my partner Tess Cohen at the far right and our bilingual paralegal specialist.

THE COURT: Good afternoon, all.

Good afternoon, Mr. Carvajal.

Will the government report to me, please?

THE DEFENDANT: Good afternoon.

MR. BRADLEY: Your Honor, would you prefer the government to remain seated?

THE COURT: I'd like you at the podium.

MR. BRADLEY: Thank you, your Honor.

The parties were last before the Court last month. What we had endeavored to do by this conference was to provide an update to the Court on two issues.

First, we mentioned the parties had had ongoing discussions about discovery and the review of production of

discovery, and trying to narrow any issues that might need to be briefed before the Court. That's issue number one.

Issue number two is for the government to report back to the Court on our overall review with regards to classified information and to propose a date for the government to file what we expect will be a protective order or motion for a protective order under Section Four of the Classified Information Procedures Act.

Taking those in turn, first, with the discovery issues, defense counsel and the government, we have had numerous discussions over the last several weeks. We believe we have been able to substantially, at least in the government's view, narrow any potential areas of dispute. However, we do understand that there is one issue that defense counsel would like to move on, and we would like to propose a briefing schedule to the Court.

THE COURT: What is that?

MR. BRADLEY: Specifically, your Honor, we've described in detail the process to which the government has met and exceeded its disclosure obligations in this case. Defense counsel has asked the government that not withstanding that they've asked the government and they have put this in a demand letter to us that the government should be required to search across DEA agency holdings worldwide regardless of whether that office worked with the government on this case for eight

different names.

THE INTERPRETER: Your Honor, so sorry to interrupt. The interpreter would like to point out that there seems to be an issue with the equipment. If we could quickly switch it out?

THE COURT: Fix it up.

THE INTERPRETER: I'm sorry, your Honor.

(Pause)

THE INTERPRETER: Interpreter ready.

THE COURT: We are going to rerepeat what was just said. I asked the government to report and the government to repeat what he said before.

MR. BRADLEY: Yes, your Honor.

Firstly, in terms of agenda for today's status conference, the government would like to report back to the Court on two issues. The first is the narrowing of disputes that may or may not be represented to the Court with regard to any discovery motion raised by defense counsel.

THE COURT: From your perspective, have you completed your production?

MR. BRADLEY: Yes, your Honor. From the government's perspective the government has produced the Rule 16 materials in its possession.

With regard to and focusing specifically on that discovery issue, since the last conference before the holidays

in December we have discussed with defense counsel on multiple occasions the process through which the government met and exceeded its disclosure obligations in this case in an attempt to narrow any disputes that defense might raise to the Court.

We understand that and we had proposed a briefing schedule that we can, with the Court's permission, set today. It appears that the parties are at an impasse on one discrete issue. And it's specifically that the defense has demanded that the government essentially search across all U.S. DEA investigative holdings, basically, all DEA offices worldwide regardless of whether they participated in the investigation of the defendant in this case for eight different names that they have posed to us.

We would like the opportunity to brief that issue and respond to the defense in writing on that to the extent they raised that with the Court.

THE COURT:  In your opinion, what does Rule 16 and Brady require?

MR. BRADLEY:  Under Rule 16 and Brady, the government's disclosure obligations extend to materials that are within the scope of the prosecution team.  We believe the Second Circuit has been very clear on that issue.

And essentially what that requires, your Honor, it does not mean that the government or any agencies are monolithic.  There is no hold of government approach to the

government's disclosure obligations. And judges in this district and in this circuit have been very clear that the prosecution is obligated to review and disclose information known to others acting on the government's behalf in a particular case. And to the extent that group working on the government's behalf, as in this case, is the DEA, that does not mean the entire Drug Enforcement Administration and its many offices worldwide. It means the actually DEA office that worked with the government in this case.

To that end, your Honor, and again, we would like to put this in writing and obviously include that Second Circuit and S.D.N.Y --

THE COURT: No. I would like to you brief it. I don't want letter briefs. I want a brief, double spaced, margins, everything else.

MR. BRADLEY: We will do that, your Honor. We have been, we're fully prepared do so.

THE COURT: Yeah. From the defendant's perspective, what's the proposal, Mr. Ohnuma.

MR. MARGULIS OHNUMA: The proposal in terms of the briefing schedule or --

THE COURT: No. What do you want?

MR. MARGULIS OHNUMA: I want them -- Listen, Mr. Carvajal, this is the second indictment in a different district against him. There's been something like nine other

people in different cases in different districts accused of the same exact crimes. I don't accept the representation that what they've given us is everything and has no mention of Basilli Catoskey, who a couple of weeks ago was mentioned as conspiring at trial by this team, was accused of introducing drug dealers to Mr. Carvajal. How can it be that there's no paper on that?

THE COURT: Are these conspirators?

MR. MARGULIS OHNUMA: They say they are.

THE COURT: All right. So what you want is that a Rule 16 obligation with, a Brady obligation with respect to each of the alleged co-conspirators be produced here?

MR. MARGULIS OHNUMA: Whether they're on this indictment or not.

THE COURT: So, what's the government position on that?

MR. BRADLEY: Your Honor, first, with regard to what we have actually done, the government does not believe there is any support. We have asked defense counsel for this too. The government does not believe there's any support for the proposition that the government should be undertaking an investigation to search across other DEA government components for materials related --

THE COURT: Are these all cases in the courts?

MR. MARGULIS OHNUMA: Yes, your Honor.

THE COURT: So, how difficult would it be to grab all

the documents that have been produced under Rule 16 in each of these cases and give it to Mr. Ohnuma?

MR. BRADLEY: To the extent those materials, your Honor, were in the government's possession like, for example, other S.D.N.Y cases.

THE COURT: You've got a federal system. Each U.S. Attorney has a file on this case. So how hard would it be to get copies of those files electronically and give it to Mr. Ohnuma? Why are we making a whole case out of production issues when everything's available to you pretty easily?

MR. BRADLEY: To take a step back, your Honor, I think it would be most helpful for the government to respond in writing on this particular issue.

THE COURT: I'm not going to prevent you from doing so. I'm thinking what's practical. I have the notion that unless judges write about procedural issues, the better it will be. We should look for the practical. If you have stuff and it's easy to get, give it. Why not?

MR. BRADLEY: And we have exactly done that, your Honor. And we share the Court's desire to avoid --

THE COURT: Well, you are saying only S.D.N.Y. You are saying only DEA involved with this case, when it would be easy enough. You don't want an open-ended search requirement at every single government office everywhere in the world. You don't want that and I could understand that. But where there

are alleged co-conspirators and they're in court and there are files that have been amassed by the particular U.S. Attorney, you can get those and produce those.  I'd be prepared to accept that and I think Mr. Ohnuma may also be prepared to accept that as a satisfactory production.

MR. BRADLEY:  Well, again, your Honor, we're not trying to create work for the Court but that disclosure order would be entirely inconsistent with Second Circuit law which has noted even just as recently as two years ago in the Hunter case that limiting disclosure obligations to the prosecution team, not hold the government, prudently prevents a prosecutor from needing to search the whole of government, including other U.S. Attorney's offices for possible material information in other cases and controversies before the Court.

THE COURT:  Does that deal with co-conspirators?

MR. BRADLEY:  It does deal with, your Honor, specifically with a similar dispute with regarding information in one DEA office's components holdings regarding co-conspirators and the defendant in that case with, as distinguished from the DEA component that actually worked with the Southern District of New York to prosecute that case.

And the Second Circuit noticed --

THE COURT:  I don't understand, your answer.  In the Second Circuit case were there co-conspirators in other districts that the defendant wanted to reach and that the

government said no in the Second Circuit uphold the government?

MR. BRADLEY:  That particular issue, your Honor, was about specifically information that was in the hand of another DEA component about a co-conspirator who ended up becoming a cooperating and testifying witness in that case.

And the Second Circuit I'm quoting are the Hunter decision and this is on page 37.  This is 32 Federal Reporter Fourth Edition at page 37.  "Such an obligation would clearly be an unworkable encumbrance on the system of justice."  And again, this is earlier on that same page.  The relevant inquiry is not what -- it is what the person did.  Not who the person is.

So, to the extent, your Honor, that the defense's argument is simply that -- well, there are other U.S. Attorneys that were involved in prosecuting people who may or may not be co-conspirators and they must have files and holdings regardless of whether or not they actually worked with our office and the DEA office in this case.  That does not mean that the government has a disclosure obligation to go and review and collect their files.  The Second Circuit has never held that.  And I think --

THE COURT:  All right.  There is no point having argument now.  I take your differences.

It's been proposed to me that the defendant will move to file its motion by January 26. the government will respond

by February 9 and defendant will reply by February 16. I adopt that schedule.

MR. BRADLEY: Thank you.

MR. MARGULIS OHNUMA: Thank you, judge.

THE COURT: Do we know, Mr. Ohnuma and Mr. Kaplan exactly, what is at issue?

MR. BRADLEY: I'm sorry, your Honor. "Mr. Bradley".

THE COURT: Mr. Bradley, sorry.

MR. BRADLEY: Its defenses --

THE COURT: Mr. Bradley, sorry. I misread the note to me. Your name is Nicholas Bradley.

MR. BRADLEY: Correct. I'll let defense counsel address what they plan to raise in the motion.

MR. MARGULIS OHNUMA: Your Honor, back in October we submitted a letter that identified six topic areas and nine names where we think there is both relevance and exculpatory information in government files. I think that the parties have managed to narrow some of that by a commitment to relatively early 3500 for some of them. I will narrow it as much as I can. But I think it's going to be anything pertinent to this case to this indictment and relating to the investigations of, I think six of the nine names, and I'll spell that out in precise detail in a motion.

THE COURT: Okay. Let's make a hearing date after February 16.

(Pause)

THE COURT: February 22 at 10:00 for the hearing.

MR. MARGULIS OHNUMA: Could we do the following week, your Honor?

COURTROOM DEPUTY: The 29th at 10:00.

MR. MARGULIS OHNUMA: That works for us. I think you just scheduled a Fatico hearing.

THE COURT: February 29, ten o'clock okay?

MR. BRADLEY: That works for the government, your Honor.

THE COURT: Is there anything else before I entertain a motion to exclude time?

MR. MARGULIS OHNUMA: Your Honor, I would ask for an update from the government when they will be filing their protective order for the CIPA discovery.

MR. BRADLEY: Thank you, your Honor. We did endeavor to provide an update to the Court following our last conference in December. Since then, your Honor, we have as the government noted, we have made a substantial amount of progress during our review as part of that review as well.

As the Court is aware and as we mentioned previously there are other government agencies and components there are involved in what is ultimately going to be what we expect a fulsome motion for a protective order. Under Section Four of the Classified Information Procedures Act.

When we were last before the Court we mentioned in the Acalla case that it took approximately five months from the date that the Court set the schedule to the date that the government was actually able to file its motion for a protective order in that case under this same docket.

We are committing all available resources to be able to hit a target similar to that.

THE COURT: I think Mr. Ohnuma is really interested to hearing a date from you, not a series of grievances.

MR. BRADLEY: Certainly, not grievances, your Honor. I just want --

THE COURT: What's the date? When are you going to file your protective order?

MR. BRADLEY: Your Honor, if we could propose June 15th, we believe that date is not only appropriate -- June 14th, we believe that date is appropriate, not only --

THE COURT: When did you start working on this?

MR. BRADLEY: We have been working on this, your Honor, over the last two or three months.

THE COURT: How many docket documents are involved?

MR. BRADLEY: Well, your Honor, I think we'd have to discuss that in another setting. But in terms of --

THE COURT: Why? Number of documents?

MR. BRADLEY: As a general matter it is a large number of documents, significantly more than the amount of documents

that were reviewed in the Acalla case.

THE COURT: Mr. Carvajal is in jail. He is presumed to be innocent. He's prejudiced by delay. I think your schedule is too leisurely.

MR. BRADLEY: If I may, your Honor, I know the Court did say and suggest that the Court wanted a date before June. We could propose and make every effort to hit May 31.

THE COURT: I want to be able to yell at you if you don't do it. So, give me a realistic date earlier than June. I want it done you understand? I want it done.

MR. BRADLEY: Correct, your Honor.

THE COURT: Okay. Then get it done.

MR. BRADLEY: And we will, your Honor.

THE COURT: So what's the date?

MR. BRADLEY: I would ask the Court for May 31st.

THE COURT: You can live with that, Mr. Ohnuma?

MR. MARGULIS OHNUMA: I thought when we were here before we were talking about April. May 31st is the very tip, the end of May.

MR. BRADLEY: If I may, I don't want to interrupt defense counsel.

THE COURT: Go ahead. Interrupt him. Come up with a good solution.

MR. BRADLEY: Your Honor, when we were last here in December the government asked for June or July. We understand

the Court does not want that date I proposed a date before June as May 31st. I believe that is appropriate and I believe we can hit that date.

Of course, as the Court is aware, it's not just the AUSAs involved. There are a significant number of stakeholders involved in any motion filed under the Classified Informations Act. I know the Court is aware about that from the Acalla case alone and that is why we make and propose the deadlines that we do. Obviously, if it was up entirely to us, we would be able to do and propose a date that we know is entirely within our control.

MR. MARGULIS OHNUMA: Judge, to answer that --

THE COURT: No. Don't answer that.

MR. MARGULIS OHNUMA: Yes, your Honor.

THE COURT: How about May 17th?

MR. BRADLEY: We will do our best, your Honor.

THE COURT: May 17th is the date by which a motion for protective order will be due.

MR. BRADLEY: Okay.

THE COURT: Split the middle. First order of principle the judge learns, when there's a dispute split the middle.

May 17th, okay? What else? What other aspect of business do we have?

MR. BRADLEY: Just an application, your Honor, on the

schedule.

THE COURT: Go ahead.

MR. BRADLEY: Your Honor, the government would respectfully of ask that the Court exclude time under the Speedy Trial Act between today's date and I believe the next date should be at least February 29, the date of the hearing that the Court scheduled under Title 18 of the U.S.C. Section 3161 (h) (7) (A) the government would respectfully submit that the proposed exclusion serves the ends of justice so that the parties can continue their review of discovery and also brief a discovery motion for the Court to consider.

THE COURT: Without objection?

MR. MARGULIS OHNUMA: Yes, your Honor.

THE COURT: So ordered.

Thank you, all.

(Adjourned)