```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                         11 Cr. 205 (AKH)

CLIVER ALCALA CORDONES,


                    Defendant.
------------------------------x
                                        New York, N.Y.
                                        January 18, 2024
                                        11:00 a.m.

Before:

                HON. ALVIN K. HELLERSTEIN,

                                        District Judge

                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
KAYLAN LASKY
NICHOLAS BRADLEY
     Assistant United States Attorneys

CESAR DE CASTRO
VALERIE GOTLIB
CRISTIAN FRANCOS
     Attorneys for Defendant



Also Present:   Kevin C. Nunnally, U.S. Department of Justice
```

1             (Case called; appearances noted)
2             THE COURT:  Mr. Cordones, it's my obligation today to
3    sentence you.
4             Have you read the presentence investigative report?
5             THE DEFENDANT:  Yes.
6             THE COURT:  Take off your mask, please.
7             THE DEPUTY CLERK:  Remove your mask.
8             THE COURT:  The people at the counsel benches, if they
9    wish to, can take off their masks.
10            Mr. Cordones, have you read the presentence
11   investigative report?
12            THE DEFENDANT:  Yes; in the affirmative.
13            THE COURT:  Has it been translated to Spanish for you?
14            THE DEFENDANT:  Yes, sir.
15            THE COURT:  Have you discussed it with your counsel?
16            THE DEFENDANT:  That's right.
17            THE COURT:  Mr. de Castro, you have objections.
18            Thank you.  Mr. Cordones.  You may sit.
19            Mr. de Castro, you have objections to paragraph 10 and
20   11 through 13, if I'm correct.
21            MR. de CASTRO:  Not 11, Judge.  10 and 13 through 19.
22            THE COURT:  Just 10 and --
23            MR. de CASTRO:  10 and 13 through 19.
24            THE COURT:  10 and 13 through 19.
25            MR. de CASTRO:  Yes.

1     THE COURT: 13 is rather innocuous.

2     MR. de CASTRO: It is. It just references the 14
3  through 19 that come before it -- after it. Excuse me.

4     THE COURT: 14 and 15 add details to the allocution
5  made by Mr. Cordones at his plea but are consistent with what
6  he said.

7     Paragraph 16 adds an element of personal enrichment,
8  which is directly contradictory to matters that you set out in
9  your submission.

10    If the government wants me to consider the payments to
11 Mr. Cordones of $150,000 for every plane he protected, that
12 would be the subject, I think, of a *Fatico*. The others I think
13 I'd be prepared to accept on a representation of the government
14 that it has the proof to support these elements.

15    I should say that in sentencing, the conduct that is
16 described at paragraphs 14, 15, 17, 18 do not change the nature
17 of Mr. Cordones's conduct as compared to what he said at his
18 plea.

19    Paragraphs 16 and 19 add a substantial element of
20 culpability, so if the government wishes me to consider that,
21 and I think it should, I would order a *Fatico*.

22    MS. LASKY: Yes, your Honor.

23    The government would ask for a *Fatico* in these
24 matters.

25    THE COURT: A lot of people are attending this, and I

don't know what your sophistication is, so I'll tell you what *Fatico* is. It's taken after a case called *United States v. Fatico*. When there are disputed aspects of a sentencing hearing, the Court is authorized to hold a hearing to resolve those facts. That's called a *Fatico* hearing.

Is the government ready for that?

MS. LASKY: The government would ask for a *Fatico* and would ask to confer with defense counsel about what date would work for defense counsel as well as the government, and, of course, the Court most importantly.

THE COURT: So I can't really go ahead until we resolve that, can we. I modify my own statement. I can make findings in terms of the sentencing guidelines, but I can't really proceed with the sentencing itself.

MS. LASKY: That's correct, your Honor.

THE COURT: Do you agree, Mr. de Castro?

MR. de CASTRO: Judge, I do agree you could not go forward with sentencing.

I want to address a little bit just what the Court said about those particular paragraphs. I think that -- I can see that the Court is sort of seeing which parts of those are consistent with the plea allocution, the admission Mr. Cordones made at his plea.

However, I think if you step back a little and look at all of that from 10 -- first of all, 10 talks about involvement

1  and his -- that he is a member of the Cartel de Los Soles,
2  which is what the government in its indictment has alleged is a
3  drug narcotics cartel, a narco-terrorism cartel, of which we
4  have not pled guilty to.  And then everything that flows from
5  that is this alleged narcotics activity that they're talking
6  about that is part of that.
7          THE COURT:  I would be prepared, Mr. de Castro, to
8  make a distinction.
9          Your client pleaded, in effect, to aiding and abetting
10 a cartel, but there is no proof that he joined the cartel.
11         MR. de CASTRO:  Aiding and abetting the FARC, which is
12 not the cartel that they're talking about here.  What they're
13 talking about is the cartel, meaning, for all intents and
14 purposes, the cartel is the government of Venezuela working
15 with the FARC separately but together, separate entities -- I
16 can let the government speak to that themselves -- and that's
17 the part that he is not.
18         THE COURT:  I take your point.
19         To tell you my own feeling about this, I don't think
20 there's an important distinction to be made between what he did
21 and what the PSIR allegedly exaggerated, except as to taking
22 money.
23         MR. de CASTRO:  Well, I hear --
24         THE COURT:  Let's just go over the PSIR, because it's
25 interesting.  I read this again last night.

1        MR. de CASTRO:  And I think, Judge, if you read the
2   probation report with the government's submission, which the
3   entire government's submission is not about the FARC and the
4   drug dealing -- well, a little bit -- but it's all about what
5   they say is General Alcala's drug dealing as part of the
6   cartel, which he did not plead guilty to and which, my
7   understanding is the Court --
8        THE COURT:  Let's look at what he said.  We're on page
9   19 of the plea agreement, and at the bottom, I ask:
10       "Did you know in 2006, around the time you were a
11  general, that FARC members engaged in drug trafficking and
12  kidnapping to support its goals?
13       Answer:  "Yes, sir."
14       And the paragraph carries out -- it sets out a number
15  of examples.  For example:  Did you, as general, prevent
16  members of FARC and associates from being arrested by
17  Venezuelan law enforcement?
18       "Yes, sir.
19       "Or by the military?
20       "I commanded the military.
21       "So you, as commander, prevented members of FARC and
22  associates from being arrested?
23       "That's right, sir."
24       That ties in with his support of drug distribution in
25  the United States.

1          We go on.  I'm now on page 21.  I'm just rephrasing.
2          "Is the charge that Mr. Alcala prevented contact
3  between FARC members and the military?"
4          Counsel said:  "Yes, your Honor.  Whereas, otherwise
5  the military may have engaged the FARC, the defendant prevented
6  the military from engaging the FARC militarily.
7          "Is that so, Mr. Alcala?  Did you, as general, command
8  that the military would not pursue members of FARC or their
9  associates?"
10         Answer:  "To prevent their contract with the FARC,
11 sir."
12         I asked, is the answer yes, and the defendant said
13 yes.
14         And I went on:  "And did you, when you were general,
15 provide protection, including freedom of movement and freedom
16 from interference, for members of the FARC and their
17 associates?"
18         Answer:  "Yes, sir."
19         Question:  "Even though you knew that they trafficked
20 in cocaine?"
21         Answer:  "Yes, sir.
22         "And you, in addition, provided weapons to FARC?"
23         Answer:  "Yes, sir.
24         "And among other things, the weapons included 20
25 grenades?"

1                Answer:  "Yes, sir.

2                "And two grenade launchers?"

3                Answer:  3.5 grenade launchers, sir."

4                Question:  "Both intended for a Luciano Marín Arango?"

5                Answer:  "Half for Luciano Marín Arango and the other

6       half for Mr. Londoño Timochenko."

7                Question:  "Who are they?"

8                Answer:  "They were the No. 1 and No. 2 people of the

9       FARC in a territory that corresponded to me in Venezuela."

10               Then you have an answer of distancing from the

11      narcotics trafficking.

12               I asked:  "And were they involved in trafficking the

13      narcotics?"

14               Answer:  "Whether they did so, that was their

15      responsibility.  At no point do they do it with me."

16               Question:  "But you knew there were doing it?"

17               Answer:  "They did it in their territory."

18               Question:  "But you knew about that."

19               Answer:  "It was a consequence of many years, because

20      that organization depended on drug trafficking to support

21      themselves."

22               Question:  "The question is whether you knew that."

23               Answer:  "I knew it, sir."

24               Question:  "Knowing that you provided weapons and

25      other assistance to that organization and to these people and

1    you were aware that the gentleman named Luciano Marín Arango,
2    also known as Iván Márquez and also known as Rodrigo Londoño
3    Echeverri and also known as Timochenko?"
4              Answer:  "Yes, sir.
5              "Did you know that the United States Secretary of
6    State has designated FARC a foreign terrorist organization?
7              "Yes, sir.
8              "You knew that at the time you were giving material
9    aid and support to FARC?
10             "Yes, sir.
11             "You knew that FARC had been engaged in terrorist
12   activities?
13             "Yes, sir.
14             "And in terrorism that was defined in the United
15   States law.
16             "That's right, sir."
17             The words are somewhat different, essentially saying
18   the same thing, except for the money; that's different.
19             If you want to persist in your objection, we'll have a
20   *Fatico* that extends to everything.
21             You want the *Fatico*?
22             MR. de CASTRO:  Yes, Judge.
23             THE COURT:  Okay.  You'll get it.
24             We'll defer now for a few minutes until we set a new
25   date, but I'll go on and make the findings that I'm required to

O1IfALCs

1    make.

2           First, let me ask you, apart from the paragraphs that
3    you mentioned, which would be 10 and 11 --

4           MR. de CASTRO:  Not 11, Judge.  10 -- I mean, I know
5    13 is just a one-liner, but, 10 and 14 through 19.

6           THE COURT:  10 to 12 is okay; right?

7           MR. de CASTRO:  Yes.  Let me just turn the page just
8    to double check, Judge.  Yes.

9           THE COURT:  And then 14 through 19.

10          MR. de CASTRO:  Correct.

11          THE COURT:  All right.  I'll schedule it.

12          MR. de CASTRO:  Now, Judge, am I hearing you correct
13   that the subject of the *Fatico* will only be related to --

14          THE COURT:  No.  You've challenged it.  It will cover
15   the whole thing.

16          MR. de CASTRO:  And I guess my question is, what's the
17   whole thing?

18          THE COURT:  All those paragraphs.

19          MR. de CASTRO:  I understand.  And those paragraphs
20   were talking about support for the FARC.

21          The government in the government's sentencing
22   submission, for example, is talking about different criminal
23   enterprises, if you will, so, FARC, Cartel de los Soles, and
24   all of that.

25          Our view is, nothing about the Cartel De Los Soles

1  should come into the Court's mind.
2          THE COURT:  That the what?
3          MR. de CASTRO:  That the separate cartel --
4          THE COURT:  I assume the cartel was the implementation
5  of what FARC was doing.
6          MR. de CASTRO:  They're not the same.
7          The FARC is really an opposition revolutionary group
8  and is mostly related to Colombia and is engaged in what, at
9  the time, everyone was calling terrorist activity.
10         THE COURT:  And you want the government to show a
11 connection between the two.
12         MR. de CASTRO:  No.  What I'm saying is that we can
13 have a *Fatico* related to that and that the government should
14 not be permitted to bring in evidence related to the cartel,
15 President Chávez and drug dealing and all of those kinds of
16 things.
17         THE COURT:  I decline to do that.
18         You want to have a *Fatico*.  You're going to have a
19 *Fatico*.  I'm not going to restrict the government.
20         MR. de CASTRO:  Okay.
21         THE COURT:  How should I call you?  Mr. Alcala or
22 Mr. Cordones?
23         THE DEFENDANT:  Alcala.
24         THE COURT:  Mr. Alcala, you pleaded guilty to two
25 counts: giving material support to a designated foreign

1  terrorist organization and receiving and transporting firearms
2  for terrorism.  Each has a mandatory maximum of 15 years.
3  Under the sentencing guidelines, there is a grouping.  We'll do
4  each separately.
5              Count One is assessed as follows:  Under section 2M5.3
6  of the guidelines, base level is six, at two levels upwardly
7  adjusted because of dangerous weapons used to assist a violent
8  act or a narcotics act.
9              Another two points are just adjusted upwards because a
10 felony was intended to promote crimes of terrorism, and there's
11 a 12-point upward adjustment called the terrorist enhancement.
12 The total is 40.
13             Count Two is evaluative of 2K2.1 of the guidelines.
14 It has an 18-level base plus four, because there were over 8
15 and fewer than 24 firearms involved.  Add another two because
16 of another destructive device, add another four because it was
17 a knowing use for felony purposes, and add another 12 because
18 it was a felony to promote terrorism.  That adds up to 40 as
19 well.
20             In addition, Mr. Alcala who was a manager or
21 supervisor of five or more people so that another three levels
22 are added, which brings us to level 43.  There's zero criminal
23 history.
24             Under the guidelines of the § 3A1.4, a terrorist
25 enhancement is to be considered as a VI-level criminal history.

             Whether it's 40 or 43, it doesn't really make any
difference.  Both are punished in category IV by 360 years to
life.

             If you were not to make the jump from I to IV, the
punishment at level 43 would be life and at level 40 would be
292 to 365 months.

             I will consider this, notwithstanding the guidelines
-- I'll do that afterwards -- but I can tell you that I'm not
going to consider Criminal History IV, although I have to find
it.

             I find that we're punishing at level 43, Criminal
History IV, and that's the guideline application.

             I said we're punishing.  That's not true.  That's not
true.  We're not punishing at that level.  That's the guideline
application.

             Do you agree, Ms. Lasky?

             MS. LASKY:  Your Honor, the government stands by the
calculation in its plea agreement, which did not include the
leadership points but understands the factual basis under which
probation and the Court did include the leadership.

             So in sum, yes, I agree.

             THE COURT:  Mr. de Castro.

             MR. de CASTRO:  The only thing, Judge, I would comment
on is, yes, I know the terrorism enhancement jumps you across
the table to IV, but it also jumps the base offense as well 12

1  points, I think.

2              THE COURT:  12 on the offense.

3              MR. de CASTRO:  On the offense level.

4              THE COURT:  And six levels on the criminal history.

5              MR. de CASTRO:  Right.  Obviously, we agree to the

6  technical application of that, because that's our plea

7  agreement and I'm not violating the plea agreement.

8              THE COURT:  That's all I'm looking for.  I know you

9  differ.

10             MR. de CASTRO:  Yes.  Thanks, Judge.

11             THE COURT:  I find that the offense level is 43 and

12 the criminal history is IV and the guideline is for a life

13 sentence.

14             Excuse me.  I took a 2023 guideline.  I should use the

15 2011 guideline.

16             MS. LASKY:  Your Honor, it's the time of sentencing, I

17 believe, but -- I apologize.  I believe that it's the

18 application at the time of sentencing, your Honor.

19             THE COURT:  I know.  That's why I'm going to change

20 it.  Let me use the 2011.  You say it's the lesser of the

21 offense to the time of the offense or time sentenced, and so

22 we're going to examine the 2011 guideline to see where we stand

23 after that.

24             Am I right?  Which guidelines should I be looking at?

25             MS. LASKY:  The government's understanding is, it's

1    the 2023, your Honor.
2             THE COURT:  The '23.  The one I looked at just a
3    moment ago.  The numbers I gave are in the blue book, 2023.
4             When did Mr. Alcala commit his offense?
5             MS. LASKY:  Your Honor, it's starting in 2006 is when
6    the plea agreement charges the offense.
7             THE COURT:  And concluded when?
8             MS. LASKY:  It does not have a cap as far as when the
9    offense ended, under the plea agreement.
10            THE COURT:  Well, to the facts as you know them.
11            MS. LASKY:  If I may, your Honor, I apologize.
12            One moment.
13            THE COURT:  There's no change.
14            Level 43 is always the punishment.
15            MS. LASKY:  The government believes that you've
16   calculated this correctly, your Honor.
17            THE COURT:  Mr. de Castro.
18            MR. de CASTRO:  Can I have one second, Judge?
19            (Counsel conferred)
20            MR. de CASTRO:  Judge, I don't have the prior manual
21   in front of me, but what I understand is that if we're just
22   talking about the jump from whatever the criminal history is to
23   Criminal History IV, I think it's always been in the terrorism
24   enhancement that a jump goes to level IV, regardless of which
25   book we use.

|     |                                                                      |
| --- | -------------------------------------------------------------------- |
| 1   | I would have to double check that.  I can try to do                  |
| 2   | that right now, but I think that's -- my understanding is that       |
| 3   | the criminal history jump from -- in this case I to IV, because      |
| 4   | of the terrorism enhancement --                                      |
| 5   | THE COURT:  Do you agree with my analysis?                           |
| 6   | MR. de CASTRO:  I believe so, yes.                                   |
| 7   | THE COURT:  I so find.                                               |
| 8   | MR. de CASTRO:  If I disagree, Judge --                              |
| 9   | THE COURT:  You'll bring it up, and I'll revise it.                  |
| 10  | MR. de CASTRO:  Thank you.                                           |
| 11  | THE COURT:  All right.                                               |
| 12  | I think the other points I have to wait until the                    |
| 13  | *Fatico*; right?                                                     |
| 14  | MS. LASKY:  I believe that's correct, your Honor.                    |
| 15  | THE COURT:  When would you be prepared?                              |
| 16  | MS. LASKY:  Your Honor, I think the government will be               |
| 17  | ready, of course, whenever the Court says it should be ready.        |
| 18  | THE COURT:  I'm asking you a question; don't tempt me.               |
| 19  | MS. LASKY:  The government would ask for a month.                    |
| 20  | THE COURT:  A month.                                                 |
| 21  | Mr. de Castro.                                                       |
| 22  | MR. de CASTRO:  Can I confer with the government on                  |
| 23  | dates?                                                               |
| 24  | THE COURT:  You may.                                                 |
| 25  | After you confer with each other, discuss the date                   |

O1IfALCs

1   with Ms. Jones and tell me how long do you think you'll be.
2            Do you know?
3            MS. LASKY:  I would say half a day, your Honor.
4            THE COURT:  I don't think you have a half a day.  I
5   think you've got more.
6            MS. LASKY:  I have what?  I apologize.
7            THE COURT:  I think this should be more.
8            MS. LASKY:  I think, then, a day, your Honor.
9            MR. de CASTRO:  And the defense may have witnesses as
10  well.
11           THE COURT:  I'll prepare two days, if I can.
12           (Counsel conferred)
13           THE COURT:  I gather that the counsel find February 27
14  and February 28, 10 to 5 those days, agreeable.  They're okay
15  for us as well, but I've got a number of matters that are
16  scheduled around the same time, and I may have to come back to
17  you and say I'll have to give you different dates, but let's
18  count the February 27 and 28.
19           MS. LASKY:  Thank you, your Honor.
20           MR. de CASTRO:  Thank you, Judge.
21           THE COURT:  Can you tell me the nature of what your
22  proof is going to be?
23           MS. LASKY:  So, your Honor --
24           THE COURT:  You can sit and bend your microphone.
25           MS. LASKY:  We expect to call several witnesses, your

O1IfALCs

1  Honor, in order to prove the facts as written in the PSR in
2  paragraphs 10 and 13 through 19.
3           THE COURT:  You have direct knowledge?
4           MS. LASKY:  Correct, your Honor.
5           THE COURT:  Direct knowledge.  Okay.
6           All right.  I'll see you February 27.
7           MS. LASKY:  Thank you, your Honor.
8           MR. de CASTRO:  Thank you, Judge.
9           (Adjourned)