O2T1CARA

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        11 Cr. 205 (AKH)

 5   HUGO ANTONIO CARVAJAL BARRIOS,

 6              Defendant.                Oral Argument
     ------------------------------x
 7
                                         New York, N.Y.
 8                                       February 29, 2024
                                         10:00 a.m.
 9

10   Before:

11                  HON. ALVIN K. HELLERSTEIN,

12                                       District Judge

13
                          APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  NICHOLAS S. BRADLEY, ESQ.
          KAYLAN E. LASKY, ESQ.
17        KEVIN T. SULLIVAN, ESQ.
          Assistant United States Attorneys
18
     ZMO LAW PLLC
19        Attorneys for Defendant
     BY:  ZACHARY MARGULIS-OHNUMA, ESQ.
20        TESS M. COHEN, ESQ.

21   ALSO PRESENT:  CAMILA MATAMOROS, Paralegal Specialist, ZMO Law

22   ALSO PRESENT:  JILL HOSKINS, Interpreter (Spanish)
                     ERIKA DE LOS RIOS, Interpreter (Spanish)
23

24

25
```

O2T1CARA

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your

3     appearances for the record.

4          MR. BRADLEY:  Good morning, your Honor.  Nicholas

5     Bradley, Kaylan Lasky, and Kevin Sullivan for the government.

6          THE COURT:  Good morning, all.

7          MR. MARGULIS-OHNUMA:  Good morning.  I'm Zachary

8     Margulis-Ohnuma, 353 Lexington Avenue, New York, New York

9     10016, for the defendant, Hugo Antonio Carvajal, who is to my

10    immediate right.  I'm joined at counsel table on the far right

11    by my partner Tess Cohen and by our legal paralegal specialist

12    Camila Matamoros.  Good morning, your Honor.

13         THE COURT:  Good morning, all.  Good morning,

14    Mr. Carvajal.

15         THE DEFENDANT:  Good morning.

16         THE COURT:  So we have a motion in front of me, right,

17    Mr. Margulis-Ohnuma?

18         MR. MARGULIS-OHNUMA:  Yes, that's correct, your Honor.

19         THE COURT:  Would you like to argue it?

20         MR. MARGULIS-OHNUMA:  Just very briefly, if I may.

21         THE COURT:  You can take as long as you want, but just

22    go to the podium.

23         MR. MARGULIS-OHNUMA:  Thank you, your Honor.  I won't

24    take that bait.

25         THE COURT:  Take the podium.

O2T1CARA

1          MR. MARGULIS-OHNUMA:  Oh, okay.

2          I know you've carefully read the papers.  I don't have

3   too much to add.

4          It's quite clear that this prosecution on its facts is

5   a sprawling investigation, the product of a sprawling

6   investigation.  It's gone on for 13 years, in three districts,

7   involving numerous agencies that have had——that have and

8   possess information that was used to bring General Carvajal to

9   court here today.

10         The government admitted yesterday at the hearing of

11  General Carvajal's co-defendant, Cliver Alcala, with respect to

12  his sentencing, witnesses testified that they were Southern

13  District of Florida witnesses.  For the government to say that

14  this is not a joint investigation or these teams are entirely

15  separate is——it makes no sense.  It was offered to your Honor

16  in an unsworn form where it's actually not even clear who's

17  talking in the memorandum of law that was submitted, describing

18  the investigation without any sort of affidavit or reports

19  talking about how the work was divided up among these offices,

20  and among the various defendants who have been prosecuted in

21  the three districts that I know of where this crime has been

22  charged.  One of the witnesses, the day before yesterday——and

23  this is not in my briefs, which is why I'm bringing it up now,

24  but you're aware——said that he came to Florida and contacted

25  the DEA in Florida to get involved in this investigation.  He

O2T1CARA

| | |
|---|---|
| 1 | then, at the government's urging, went out of his way to name |
| 2 | General Carvajal as someone who was complicit in his detention |
| 3 | after trying to stop narcotics in Yaracuy in Venezuela.  So the |
| 4 | investigation——General Carvajal is charged in Florida as well |
| 5 | as here.  Now that charge can't go forward because he wasn't |
| 6 | extradited on it, but there's a pending indictment in Florida |
| 7 | also. |

<blockquote>
So there's just no question on the facts that this is a big investigation, involves a lot of US attorneys, involves a lot of different offices, and we are asking them——we submit that he's innocent, and are asking the government to check the files involved in this investigation.  It really doesn't go further than that.

The material we want them to look at is voluminous. Do we know if there's exculpatory information in there?  Well, we know he didn't do the crime, and we suspect there is——and we know there's information that other people committed the crimes he's accused of.  And I'll just quote briefly from Supreme Court in *Agurs*.
</blockquote>

THE COURT:  The fact that other people are guilty doesn't mean that your client is not guilty.

MR. MARGULIS-OHNUMA:  In and of itself it doesn't, but it can be used to explain some of the things that are going to be testified about in a way that would make that testimony much weaker.

O2T1CARA

1          And which brings me to another important point, which

2     is that the government has said, it's okay if our witnesses are

3     testifying——

4          THE COURT:  Goes to what, all evidence or exculpatory

5     evidence?

6          MR. MARGULIS-OHNUMA:  No, no.  Look, I don't want

7     inculpatory evidence; I want exculpatory evidence.  I want them

8     to look and bring me anything that's exculpatory.

9          THE COURT:  You're making a motion for *Brady*, right?

10         MR. MARGULIS-OHNUMA:  Principally, and Rule 16, but we

11    have a constitutional right under *Brady*, so it's a little

12    stronger.  But it's *Brady* and Rule 16.  But it's really for

13    them to, in good faith, look and give us anything that's

14    arguably exculpatory in the Southern District of Florida and

15    the Eastern District of New York and the other components of

16    the DEA that investigated this.

17         THE COURT:  I assume that the government has given you

18    everything, if anything, that is exculpatory.

19         MR. MARGULIS-OHNUMA:  They have declined to engage

20    with the Eastern District of New York and the Southern District

21    of Florida.  So they haven't.  They've given us everything that

22    happens to be——

23         THE COURT:  What makes you feel that the

24    investigations there have anything that would be exculpatory to

25    your client?

O2T1CARA

1          MR. MARGULIS-OHNUMA:  Okay.  Well, so numerous grounds

2     for that are laid out in the papers.  Let me give one example,

3     okay, which is that in 2012, Mr. Carvajal hired an attorney,

4     and that attorney also was hired by Pedro Luís Martin Olivares.

5     Subsequently, Pedro Luís Martin Olivares, who was a government

6     official for some time, was indicted in the Eastern District of

7     New York, and the government has——sorry.  I lost my train

8     because I see Mr. Bradley looking quizzical.  He's correcting

9     me.

10          THE COURT:  Don't look at Mr. Bradley; look at me.

11          MR. MARGULIS-OHNUMA:  Pedro Luís Martin Olivares was

12     indicted subsequently in the Southern District of——

13          THE COURT:  It's the same question.  What makes you

14     think that there is anything exculpatory or, in the words of

15     Rule 16, something material to preparing your defense?

16          MR. MARGULIS-OHNUMA:  What makes me think that

17     that's——so in Pedro——in the files that I've identified,

18     including Pedro Luís Martin Olivares, I think there's

19     information about Pedro Luís Martin Olivares going behind

20     General Carvajal's back to facilitate narcotics trafficking.

21     And if it's only inculpatory, great, they don't have to give it

22     to me, but they have to look.  They have to look.  And they've

23     said, no, we can turn a blind eye.  It doesn't matter, even if

24     it's materially exculpatory.  And what they've also said,

25     Judge——

O2T1CARA

1          THE COURT:  I don't think they've said that.

2          MR. MARGULIS-OHNUMA:  Well——

3          THE COURT:  I don't think they said they're turning a

4   blind eye.

5          MR. MARGULIS-OHNUMA:  They say they have no

6   obligation.

7          THE COURT:  Let's hear from Mr. Bradley what they did.

8          MR. MARGULIS-OHNUMA:  May I make one more point.

9          THE COURT:  Yes.

10         MR. MARGULIS-OHNUMA:  Okay.  Which is that they've

11  agreed to provide *Giglio* from those other offices regarding the

12  witnesses that they are planning to call.

13         THE COURT:  Right.

14         MR. MARGULIS-OHNUMA:  So if they can provide *Giglio*,

15  why can't they also provide materially exculpatory information

16  from those offices?

17         THE COURT:  They have to provide materially

18  exculpatory information.

19         MR. MARGULIS-OHNUMA:  They're saying they don't, if

20  it's in the possession of Florida or Brooklyn.

21         THE COURT:  No, no, no.  You are saying that

22  everything in those other files is exculpatory.

23         MR. MARGULIS-OHNUMA:  I'm not.  I'm not, your Honor.

24  I'm saying they have to search for exculpatory evidence there,

25  and if it's arguably exculpatory, they need to turn it over

O2T1CARA

1    under *Agurs*.

2              THE COURT:  Only if they have a good faith belief that

3    there is exculpatory material.

4              Let's find out what the government did and what the

5    government says it's obligated to do.  Go ahead, Mr. Bradley.

6              MR. BRADLEY:  Thank you.  Your Honor, I'll move to the

7    podium.

8              THE COURT:  Thank you.

9              MR. BRADLEY:  So, your Honor, I'll just start with the

10   law, just the first principles, and then just explain what the

11   government has done and why we believe we have gone above and

12   beyond our obligations under Rule 16 and *Brady*.

13             As a matter of first principles, your Honor, the

14   Second Circuit has very clearly held that the government's

15   discovery and disclosure obligations under *Brady* and Rule 16

16   extend to information that's in the government's possession——in

17   other words, information that is known to the prosecutor or is

18   in the custody of and possession of the prosecution team.

19   There's really no ambiguity on that front, your Honor.  And

20   district courts have consistently applied those principles,

21   even after *Hunter*, which also just reaffirmed those general

22   ideas.  We have met and exceeded those obligations here.  We

23   have reviewed and produced discovery in our office's

24   possession, in the Southern District of New York, and the DEA

25   component in the special operations division that has worked

O2T1CARA

1    with our office—

2              THE COURT:  What have you not done that

3    Mr. Margulis-Ohnuma wants you to do?

4              MR. BRADLEY:  Well, it appears that there are two

5    things, your Honor, but primarily it appears that defense

6    counsel would like the government to search or ask the entire

7    DEA and the U.S. Attorney's Offices for the Eastern District of

8    New York and the Southern District of Florida for information

9    regarding six different names for individuals that were

10   publicly charged by those districts.  I want to note, your

11   Honor, that first of all, we are not—the government is not

12   aware of any exculpatory information that is being held by

13   another component of the Department of Justice in this case;

14   and second of all, as part of the government not only meeting

15   but exceeding its obligations under Rule 16 and *Brady*, the

16   government has requested, we have collected, and we have

17   reviewed and produced discoverable materials from the entire

18   Drug Enforcement Administration, agencywide—in other words,

19   all offices worldwide.

20             THE COURT:  So you've searched your office, right?

21             MR. BRADLEY:  Correct.

22             THE COURT:  And you searched the DEA office.

23             MR. BRADLEY:  Correct.  Not just the agency that—

24             THE COURT:  Not for the whole DEA but for everything

25   relating to its investigation of the folks mentioned yesterday

O2T1CARA

1    and the folks that defendant mentions today.

2          MR. BRADLEY:  Well, I'd like to clarify that, your

3    Honor.  First, with regard to the DEA component that had worked

4    directly with us as an arm of the prosecutor in this case, that

5    is a group known as the Special Operations Division Bilateral

6    Investigations Unit.  They worked——they are a component of the

7    DEA.  They worked with us on——this office on this case.  To the

8    extent they had anything in their possession and control

9    regarding this investigation, we have collected it, we have

10   reviewed it, and we have produced those discoverable materials.

11         THE COURT:  There's not a simple conspiracy here, as

12   we learned yesterday.  There are a lot of people involved, and

13   a lot of different pieces of it.  And I don't know to what

14   extent the government is going to rely on a scope of conspiracy

15   that is larger than any particular individual himself did.  I

16   suppose it is going to.  So there's a natural desire on the

17   part of a defendant to look at all the different files in this

18   investigation that may have exculpatory information.  Now I'm

19   not sure that you didn't do that, but you're not saying things

20   to give me confidence that you did.  Because the cases against

21   the other fellows who worked from Colombian FARC and in

22   Venezuela to receive that information and ship it onwards all

23   had a piece of the pie, and it's one pie, and

24   Mr. Margulis-Ohnuma wants to have the assurance that you looked

25   in that whole pie for anything exculpatory and you gave it to

O2T1CARA

1    him.  That's the question under *Brady*.  Did you?

2              MR. BRADLEY:  That's correct, your Honor.  And I'd

3    like to answer that in two parts, because I believe we have met

4    that obligation.

5              THE COURT:  I don't know why you can't say yes or no.

6              MR. BRADLEY:  Well, we have, your Honor.  The answer

7    is yes.

8              THE COURT:  The answer is yes.  Okay.

9              MR. BRADLEY:  And not only have we gone——and we have

10   gone beyond that, your Honor, because as we mentioned in our

11   brief, the government has searched agencywide, not just with

12   the component of the DEA we worked with, for any reports,

13   records, materials that mention the defendant.

14             THE COURT:  But the DEA did work before you got

15   involved in the case, and that became relevant to the materials

16   of this case.  Have you looked there?

17             MR. BRADLEY:  I'm sorry, your Honor.  I just want to

18   make sure I'm answering the question.  The DEA materials?

19             THE COURT:  The DEA began its investigation of these

20   people before you got into the case, I assume.

21             MR. BRADLEY:  Me personally?

22             THE COURT:  A preliminary investigation, and they say,

23   we got something, we'll call in the U.S. Attorney.  Okay.  Now

24   I want to make sure you searched that earlier stage.

25             MR. BRADLEY:  Correct, your Honor, we have.

O2T1CARA

1           THE COURT:  You have.

2           MR. BRADLEY:  And that's over 20 years of records that

3    have been held by the DEA, not——

4           THE COURT:  So you just need to answer, yes, we have.

5           MR. BRADLEY:  Yes, we have, your Honor.  Apologies.  I

6    didn't hear the Court.

7           THE COURT:  So what is it the defendant wants you to

8    search that you haven't searched?

9           MR. BRADLEY:  It appears, your Honor, that the

10   defendant would like us to search for records within the DEA

11   that are not necessarily going to have any reference to the

12   defendant.  So just to note, your Honor——

13          THE COURT:  The investigation is not focused only on

14   this defendant; it's focused on others in the same group,

15   right?

16          MR. BRADLEY:  That's correct, your Honor, but the

17   defendant would be the only one tried here, your Honor.

18          THE COURT:  The only one to be what?

19          MR. BRADLEY:  The only defendant who will be tried at

20   the trial in this case will be the defendant, and we expect

21   that the evidence will be——

22          THE COURT:  You're alleging a conspiracy, are you not?

23          MR. BRADLEY:  That's correct, your Honor, and we

24   intend to prove beyond a reasonable doubt that the defendant

25   agreed with others to engage, among other things, in

O2T1CARA

1    narco-terrorism offenses and narcotics importation conspiracy

2    offenses, but with regard——

3           THE COURT:  Why am I not able to get a clear answer

4    that you looked not only to the files relating to the defendant

5    himself but also to the conspirators?

6           MR. BRADLEY:  We did, your Honor; those files that

7    were in the government's possession.

8           THE COURT:  So what is it that you're asked to do that

9    you say, I'm not going to do?

10          MR. BRADLEY:  We're being asked, your Honor, to go

11   talk——to go request and collect files from other U.S.

12   Attorney's Offices that did not participate in this

13   investigation, and what we have no basis and defense has not

14   identified any basis for the government to believe that there

15   are exculpatory information.  That undermines well-worn

16   prosecution team principles.  We don't believe, your Honor,

17   that that is something that is not only fair but I believe that

18   imposes the very type of monolithic view of government that the

19   Second Circuit has repeatedly rejected, not only in cases like

20   *Avellino* but also in cases such as *Hunter*.  I should note, your

21   Honor, that even the defendant in——the defendants in *Hunter* did

22   not advocate for some kind of view that the government is

23   required to make inquiries of every U.S. Attorney's Office or

24   other components in the Department of Justice.

25          THE COURT:  No one is asking you to do that.  But what

O2T1CARA

1  about Fernando Blengio, who owned the airplane that was

2  involved in importation into the United States of some of the

3  FARC cocaine with which Carvajal is allegedly involved?  Did

4  you look there?

5          MR. BRADLEY:  Well, to the extent that we had——the

6  government had materials in its possession that mentioned

7  Blengio or——

8          THE COURT:  You didn't ask the——

9          MR. BRADLEY:  The Southern District of Florida?  No,

10  we did not, your Honor.  And as the Court——in accordance with

11  the Court's previous holdings with regard to Mr. Blengio, there

12  really isn't any basis to believe that there would be anything

13  exculpatory with regard to him either.  As the Court may recall

14  from the Rule 15 deposition motion and argument on that point,

15  Mr. Blengio agreed with others to bribe the defendant in order

16  to ensure that his plane full of narcotics would be safely

17  dispatched out of Venezuela, and then, in furtherance of that,

18  he paid someone who he believed to be the defendant but he had

19  never met him.

20          THE COURT:  Well, Mr. Margulis-Ohnuma mentions five

21  people, Candelo, Olivares, Villaroel, Blengio, and Villasana.

22  Would it be appropriate to ask the U.S. Attorney involved in

23  those cases and the DEA if there's anything in those files

24  relating to Carvajal?

25          MR. BRADLEY:  If I may, your Honor, first, we have

O2T1CARA

1    searched all DEA files that relate to Carvajal across—

2              THE COURT:  The answer is that you've done it.

3              MR. BRADLEY:  With regard to the DEA.

4              THE COURT:  For the DEA, you've done it.

5              MR. BRADLEY:  Well, if I may clarify, your Honor.  I

6    just want to make sure that the record is clear.

7              THE COURT:  The record is clear.  You're saying yes,

8    you've done it with the DEA.

9              MR. BRADLEY:  Yes, with regard to records that relate

10   to Carvajal.  So if there were—

11             THE COURT:  What did I ask you?

12             MR. BRADLEY:  Yes, your Honor, you did ask me that.

13             THE COURT:  Why are you fencing with me?

14             MR. BRADLEY:  I'm not, your Honor.

15             THE COURT:  If you can answer yes, why don't you just

16   answer yes and stop qualifying it.

17             MR. BRADLEY:  Of course, your Honor.  Thank you.

18             THE COURT:  So the answer is?  Yes, you have, or no,

19   you haven't?

20             MR. BRADLEY:  I just want to make sure I'm answering

21   the question, your Honor.

22             THE COURT:  Can we get a repetition of the question.

23             MR. BRADLEY:  If I may, your Honor.

24             THE COURT:  No, you may not.  We'll listen to the

25   question.  Listen to the question and don't be so intent on

O2T1CARA

```
 1 │ your answer.
 2 │          MR. BRADLEY:  Of course.
 3 │          (Record read)
 4 │          THE COURT:  And the answer, you say you have asked the
 5 │ DEA.
 6 │          MR. BRADLEY:  Correct, your Honor.
 7 │          THE COURT:  And now I'm asking you about the U.S.
 8 │ Attorneys.
 9 │          MR. BRADLEY:  We have not done that, your Honor, and
10 │ we believe, first, there is no basis to believe there are
11 │ exculpatory materials in those files.  Also, I would note that
12 │ that would undermine some very well-worn prosecution team
13 │ principles.  There is no basis to believe——and simply because
14 │ there is none——that those offices conducted a joint
15 │ investigation, did anything that would qualify as being arms of
16 │ the prosecution team in this case.  And furthermore, your
17 │ Honor, just as a matter of fairness, some of these individuals
18 │ are fugitives and so it's unlikely that those offices have even
19 │ produced discovery in that case.  I should note that in the
20 │ Eastern District of New York, Mr. Kotosky is a fugitive,
21 │ Mr. Antonio Villasana Fernandez is a fugitive, and with
22 │ regard——
23 │          THE COURT:  All that is irrelevant.  The relevance is
24 │ that you didn't ask because you didn't believe there was
25 │ anything exculpatory, and your obligation is to deliver only
```

O2T1CARA

1    things that you reasonably believe are exculpatory, right?

2            MR. BRADLEY:  Correct, your Honor, with regard to

3    what's in the government's possession.

4            THE COURT:  Okay.  So given that, Mr. Margulis-Ohnuma,

5    what can I ask Mr. Bradley to do that he hasn't done?

6            MR. MARGULIS-OHNUMA:  Your Honor, what you just heard,

7    or what I just heard, was completely different from what's in

8    the papers, and what they told us orally.  What they told us—

9            THE COURT:  Now we have what he said he did.  That's

10   the representation of the government.

11           MR. MARGULIS-OHNUMA:  Well, I think there's confusion

12   because there's a lot of subordinate clauses.  So I'd like to—

13           THE COURT:  Take his word, what he said.  And I'm

14   asking you again, isn't that a discharge of the government's

15   obligation under *Brady*?

16           MR. MARGULIS-OHNUMA:  If he actually searched the DEA

17   files for those five names, which is not what he said in the

18   papers.  What he said in the papers was, we searched the DEA

19   files for your client's name and variations of it, but we

20   decline to search DEA's files for the six other guys who were

21   involved in the conspiracy.  That's what he said in the papers.

22   So that's different from what he just told you.

23           THE COURT:  He told me he searched the DEA files; for

24   what, Mr. Bradley?

25           MR. BRADLEY:  For any conceivable reference to the

O2T1CARA

1   defendant and his name, including typos, nicknames, anything

2   else.  So to the extent, your Honor, that any DEA office,

3   including offices in Florida and in Brooklyn, Miami, anywhere

4   else, if, for example, they mention Carvajal and Kotosky, or

5   Pedro Luís Martin, we would have collected that and, if

6   discoverable, we would have produced it.

7           MR. MARGULIS-OHNUMA:  But only if they used his name.

8           THE COURT:  I hold that that's sufficient.

9           MR. MARGULIS-OHNUMA:  Okay.  I mean, if that's your

10  holding, that's your holding.  The subsequent ask is that we

11  get the files from the other co-conspirators who have been

12  prosecuted in Florida and in the Eastern District of New York,

13  which are the same names.

14          THE COURT:  Under Rule 16.

15          MR. MARGULIS-OHNUMA:  Under Rule 16 and under *Brady*,

16  yes.

17          THE COURT:  Well, he's answered you under *Brady*,

18  hasn't he?

19          MR. MARGULIS-OHNUMA:  He said he doesn't——he said he

20  hasn't looked.

21          THE COURT:  He said——

22          MR. MARGULIS-OHNUMA:  You know, part of the problem

23  here, your Honor, is this has been going on for 13 years.

24          THE COURT:  Can you not talk when I'm talking.

25          MR. MARGULIS-OHNUMA:  I apologize.  Yup.

O2T1CARA

1        THE COURT:  He said he's given you everything and he's

2    looked for everything that he believes is exculpatory.  That

3    answers *Brady*.  So is there something under Rule 16 which asks

4    for evidence that's material in preparing the defense?

5        MR. MARGULIS-OHNUMA:  Yes, your Honor.

6        THE COURT:  What?

7        MR. MARGULIS-OHNUMA:  The information about these

8    offenses, about the specific crimes that he's accused of, to

9    the extent it consists of, you know, tangible evidence, is

10   material, is material to the preparation of the defense.  How

11   am I supposed to prepare a defense about a plane that crashed

12   when there's a half dozen people who are also accused of it and

13   I don't have the files about those people's participation?  So

14   whether it's exculpatory or not, I need it to prepare the

15   defense.

16       THE COURT:  Response, Mr. Bradley.

17       MR. BRADLEY:  I'm a little puzzled by what——

18       THE COURT:  I don't care if you're puzzled or not.

19   What's your response?

20       MR. BRADLEY:  My response is, your Honor, that we've

21   met and exceeded our obligations under Rule 16.  The notion

22   that the government is obligated, just by, you know,

23   Mr. Margulis-Ohnuma's say-so, to go request, collect, and

24   review files that were held by other U.S. Attorney's Offices

25   for people that——that we have no basis to believe have any

O2T1CARA

1  exculpatory information in them, under Rule 16 or otherwise,

2  undermines well-worn prosecution team principles.  And I should

3  also just note, your Honor——

4          THE COURT:  You just have too many words, Mr. Bradley.

5  Focus on the question at hand.

6          MR. BRADLEY:  My apologies, your Honor.

7          THE COURT:  The allegations against Mr. Carvajal are

8  based on things he did and also, if he's shown to be a member

9  of a conspiracy, the acts of others.  It doesn't extend to

10  every prosecution.

11          THE INTERPRETER:  Your Honor, one moment, please.

12          Please continue, your Honor.  Thank you.

13          THE COURT:  Do you need me to repeat anything,

14  Mr. Carvajal?

15          THE DEFENDANT:  I haven't been listening for a while.

16          THE COURT:  What was the last thing that you were

17  listening to?

18          THE DEFENDANT:  Five minutes after the prosecutor

19  stood up.

20          THE COURT:  What is it?

21          THE INTERPRETER:  Five minutes after the prosecutor

22  stood up.

23          THE COURT:  What's the last thing you remember he

24  said?

25          THE DEFENDANT:  That he does not have the obligation

O2T1CARA

1    to request the information from other offices.  That's the most

2    important thing.

3              THE COURT:  Okay.  I got it.  So he said that he has

4    obligations only to ask for things that he reasonably believes

5    can be exculpatory and he's done that.  And your attorney took

6    issue with it.  And now we're talking about another concept

7    under Rule 16 of the Federal Rules of Criminal Procedure which

8    requires the government to produce documents, among other

9    things, that are material to your counsel's preparing your

10   defense.  That's what we're discussing now.  And my point that

11   I was about to make to Mr. Margulis-Ohnuma was that

12   Mr. Carvajal is being tried for acts he did and for acts, if

13   he's shown to be a member of the conspiracy, of what the

14   members of the conspiracy did.  If there are documents that

15   relate to those acts of conspirators that will be involved in

16   the case, Mr. Carvajal and his counsel are entitled to consider

17   them in preparing their defense, and they should be disclosed.

18             THE DEFENDANT:  Thank you.  Thank you very much.

19             THE COURT:  If not——can you hear now?

20             THE DEFENDANT:  Yes, yes.

21             THE COURT:  If not, the government doesn't have to

22   produce them.

23             Comment, Mr. Bradley.

24             MR. BRADLEY:  I'm sorry, your Honor?

25             THE COURT:  Comment.  Do you agree with what I said?

O2T1CARA

1          MR. BRADLEY:  I agree, your Honor, with regard to

2     materials that are in the government's possession.

3          THE COURT:  Okay.  Now is there anything that you

4     haven't produced so far that you're obligated to produce?

5          MR. BRADLEY:  Not that the government is aware of,

6     your Honor.  We've produced the Rule 16 material——

7          THE COURT:  Mr. Margulis-Ohnuma?

8          MR. BRADLEY:  ——in our possession.

9          MR. MARGULIS-OHNUMA:  I'm sorry.  Mr. Bradley is

10    playing games with the word "government."  What he means by

11    "government" is this office, only in Manhattan, not in Brooklyn

12    and not in Florida.  So he hasn't produced anything from

13    Brooklyn or Florida and has refused for months and months and

14    months to check there or produce anything, and hasn't engaged

15    with us at all.

16         MR. BRADLEY:  Your Honor, I appreciate

17    Mr. Margulis-Ohnuma's passionate advocacy, but——

18         THE COURT:  Hold.  Hold.

19         MR. BRADLEY:  Thank you.

20         THE COURT:  And what Mr. Bradley has represented is

21    sufficient.

22         MR. MARGULIS-OHNUMA:  Could wet get him to explicitly

23    define "the government."  When he says "the government," does

24    he mean——

25         THE COURT:  The focus of the scope of the prosecution

O2T1CARA

1   inquiry is what the agency did.  Bureaucratic proximity is

2   irrelevant.  It does not speak to the actual relationship

3   between the prosecutors on the one hand and the agencies,

4   divisions, and subdivisions at issue on the other.  I quote

5   from *United States v. Hunter*, 32 F.4th 22, 35 (2d Cir. 2022),

6   and *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006).

7           MR. MARGULIS-OHNUMA:  May I address that.

8           THE COURT:  Sit down and be quiet, and when I finish,

9   you'll be able to do it.

10          An entire agency does not come within the scope of the

11  prosecution team because some agents from that agency

12  participated in portions of an investigation.  And that's from

13  *United States v. Locascio*, 6 F.3d 924, 948-49 (2d Cir. 1993).

14          The question generally turns on whether the agency

15  conducted a joint investigation.  And that's from *United States

16  v. Alexandre*, 22 Cr. 326, decision by Judge Castel, reported at

17  2023 WL 416405, at *5 (S.D.N.Y. Jan. 26, 2023), and other

18  cases.

19          The relevant factors cited by Judge Castel are:  (1)

20  participation in the prosecution's witness interviews, (2) was

21  involved in presenting the case to the grand jury, (3)

22  reviewing documents gathered by or shared with the prosecution,

23  (4) playing a role in the development of prosecutorial

24  strategy, or (5) accompanying the prosecution to court

25  proceedings.  I interpret what Mr. Bradley has said as fully

O2T1CARA

1    satisfying those obligations.  Accordingly, defendant's motion

2    is denied.

3            Any further comments, Mr. Margulis-Ohnuma?

4            MR. MARGULIS-OHNUMA:  No.  Thank you, your Honor.

5            THE COURT:  What's next, Mr. Bradley?

6            MR. BRADLEY:  Your Honor, we—as we discussed at the

7    last conference, we—the government, intends to submit its

8    Classified Information Procedures Act protective order by

9    May 17th.  I would propose that we set—

10           THE COURT:  That's going to be *in camera*, right?

11           MR. BRADLEY:  That's correct, your Honor.  I would

12   propose that we set another—a control date in approximately 60

13   days from now, at which point the parties can advise the Court

14   perhaps whether Mr. Margulis-Ohnuma and the defendant have any

15   other consolidated pretrial motions under Rule 12.  And—

16           THE COURT:  And we'll anticipate that we'll be

17   finished with the CIPA materials before 60 days.

18           MR. BRADLEY:  It would not be before the 60 days, your

19   Honor.  I would anticipate that that motion would be filed by

20   May 17th.  So I guess 60 days from now would take—

21           THE COURT:  But what date was May 17th?  That's two

22   and a half months.

23           MR. BRADLEY:  That's correct.

24           THE COURT:  Why are we waiting so long?

25           MR. BRADLEY:  Well, we discussed this at the last

O2T1CARA

conference, your Honor.  Just the amount of materials that the

government is reviewing.  We have notified all relevant

components of that May 17 date.  Everyone with all the relevant

components within the United States government that have——need

to be brought to bear on this classified information submission

have been notified——

THE COURT:  Mr. Margulis-Ohnuma?

MR. MARGULIS-OHNUMA:  As I expressed earlier, no, I

think they can do it quicker and I think they should do it

quicker.

THE COURT:  What?

MR. MARGULIS-OHNUMA:  I think they can do it quicker

and I think they should do it quicker.  We wasted four months

going back and forth for them to refuse to look for further

information in government files.  I think we need to move this

along.  I think we should set a trial date.

THE COURT:  We haven't wasted four months.

MR. MARGULIS-OHNUMA:  Well, I'm not referring to the

time briefing, your Honor.  I'm referring to the time where——

THE COURT:  Why do you need two and a half months?

MR. BRADLEY:  Well, your Honor, May 17th is the date

that the Court has already set.  The Court set that.

THE COURT:  That doesn't mean it can't be changed.

MR. BRADLEY:  I understand that, your Honor, for——but

just to go back into that, your Honor, in part, there is a

O2T1CARA

| | |
|---|---|
| 1 | considerable amount of classified information in this case. |
| 2 | THE COURT:  Give me an order of magnitude. |
| 3 | MR. BRADLEY:  Correct, your Honor. |
| 4 | THE COURT:  Give me an order of magnitude. |
| 5 | MR. BRADLEY:  I would have to discuss that in a |
| 6 | different setting, your Honor, but it is significantly—— |
| 7 | THE COURT:  Just the number?  You have to discuss that |
| 8 | off the record? |
| 9 | MR. BRADLEY:  With regard——I can—— |
| 10 | THE COURT:  How many documents are involved? |
| 11 | MR. BRADLEY:  Your Honor, I would have to discuss that |
| 12 | in a different setting under Section 2.  But I can tell you, |
| 13 | perhaps give the Court comfort just that it is——as I've |
| 14 | mentioned in the past, it is considerably more than what was at |
| 15 | issue in Cliver Alcala's case, and based on that comparable, |
| 16 | the Court found that May 17th was an appropriate date for the |
| 17 | government to submit its CIPA protective order motion in this |
| 18 | case. |
| 19 | THE COURT:  I am powerless to deal with this unless |
| 20 | you give me some sense of the magnitude. |
| 21 | MR. BRADLEY:  Your Honor, we are talking about——I |
| 22 | mean, with regard to general volume, your Honor, we're talking |
| 23 | well into the thousands. |
| 24 | THE COURT:  So the motion is to be made by May 17, and |
| 25 | the control date is 60 days? |

O2T1CARA

1          MR. BRADLEY:  I think a control date of 60 days with

2    regard to any nonclassified motion submissions would be

3    appropriate, and——

4          THE COURT:  Do you have any more motions to make,

5    Mr. Margulis-Ohnuma?

6          MR. MARGULIS-OHNUMA:  Judge, I——could I consult

7    with——right now I don't think so, but I have a question for the

8    government.  I might be able to clear it up.

9          THE COURT:  Yeah.  What is it?

10          (Counsel conferring)

11          MR. BRADLEY:  Your Honor, thank you for the break.  We

12    did discuss this with Mr. Margulis-Ohnuma.  What the parties

13    would propose jointly is that the Court set a status conference

14    in 60 days.  We will engage with Mr. Margulis-Ohnuma in the

15    meantime just to ensure that he understands the scope of the

16    evidence and——

17          THE COURT:  All right.  We'll adjourn for 60 days.

18          MR. BRADLEY:  Thank you.  Your Honor, the government

19    would then respectfully——

20          THE COURT:  Let's get a date first.

21          You want 60 days before May 17?  What's the point of

22    that?

23          MR. BRADLEY:  I mean just 60 days from today, your

24    Honor.

25          THE COURT:  Why don't we pass May 17?

O2T1CARA

1          MR. BRADLEY:  Okay.

2          THE COURT:  May 29, at 10:00.

3          MR. MARGULIS-OHNUMA:  Yes, Judge.

4          MR. BRADLEY:  That works for the government.

5          THE COURT:  Motion?

6          MR. BRADLEY:  Yes, your Honor.  The government would

7   respectfully request that the Court exclude time under the

8   Speedy Trial Act between today's date and the next status

9   conference on May 29, 2024, under Title 18 of the United States

10  Code Section 3161(h)(7)(A).  The government would submit that

11  the proposed exclusion of time would serve the ends of justice

12  so that the parties can continue their review of discovery with

13  an eye toward potential motion practice.

14         MR. MARGULIS-OHNUMA:  Your Honor, I'm going to object

15  for the reasons previously stated.

16         THE COURT:  Sorry?

17         MR. MARGULIS-OHNUMA:  I'm going to object to the

18  exclusion of time for the reasons previously stated.

19         THE COURT:  You object.

20         MR. MARGULIS-OHNUMA:  Yes.

21         THE COURT:  Objection overruled, for the reasons cited

22  by the government.  We have to go through a procedure to filter

23  documents that are sufficiently sensitive so they're not able

24  to be produced in the public trial but need to be dealt with in

25  some alternative fashion.  It's going to take time and can't be

O2T1CARA

1   hurried.  And I tried to but I'm not in any position to be able

2   to, in good faith, suggest a date earlier than May 17.  And

3   this status conference is designed to come right after that,

4   and if we keep that date, I will expect all motions of whatever

5   kind to be made by then, except motions *in limine* before trial

6   or *Daubert* motions, and we would then be in a position perhaps

7   to set a trial date.  Government motion is granted.  The

8   objection is overruled.

9           Anything further, folks?

10          MR. BRADLEY:  Not from the government.  Thank you.

11          THE COURT:  Thank you.

12          MR. MARGULIS-OHNUMA:  Not from the defense.  Thank

13   you, Judge.

14          THE COURT:  Thank you.  Good day.

15                          o0o