UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                    :

UNITED STATES OF AMERICA,             :

                                      :

            v.                        :           S4 11-CR-205 (AKH)

                                      :

NICOLÁS MADURO MOROS, *et al.*       :

                                      :

             Defendants.     :
-------------------------------------------------------------------X

### REPLY OF NICOLÁS MADURO MOROS AND CILIA FLORES DE MADURO TO THE GOVERNMENT'S OPPOSITION TO THEIR MOTIONS TO DISMISS THE INDICTMENT DUE TO INTERFERENCE BY THE UNITED STATES GOVERNMENT WITH THEIR SIXTH AMENDMENT AND DUE PROCESS RIGHTS

In its opposition, the government does not contest that President Maduro and First Lady and National Assembly member Flores de Maduro have a property interest under Venezuelan law in the form of a legal requirement that the government of Venezuela pay their legal fees. Likewise, the government does not contest that Mr. Maduro and Ms. Flores de Maduro lack the personal resources to fund their own defense. The government also concedes OFAC has, on other occasions, permitted a third-party subject to U.S. sanctions to pay legal fees for an individual who is also subject to U.S. sanctions. These concessions effectively end the matter. Under these circumstances, OFAC's refusal to allow counsel to accept funds from the government of Venezuela for legal fees interferes with the rights of Mr. Maduro and Ms. Flores de Maduro to counsel of their choice. The "remedy" offered by the government, the availability of court-appointed counsel, is no remedy at all. Forcing defendants to accept court-appointed counsel not of their choosing is, by definition, no cure for a violation of their right to counsel of their choice. The only remedy is dismissal since this Court cannot allow this case to proceed in violation of Mr. Maduro's and Ms. Flores de Maduro's constitutional rights.

If the Court is not prepared to dismiss on the present record, it should hold an evidentiary hearing on this motion. The government's opposition raises more questions than it answers. The government does not explain: 1) why denial of the ability of Mr. Maduro and Ms. Flores de Maduro to have their legal fees paid for by the government of Venezuela is a necessary response to a national emergency posing an unusual and extraordinary threat (*see* 50 U.S.C. §§ 1701-07), particularly given the normalization of relations between the two countries; 2) why, if this was a matter of national security emergency, OFAC did not amend the license related to Ms. Flores de Maduro immediately when counsel specifically pointed out to OFAC the inconsistency between amending the license related to Mr. Maduro and failing to amend the license related to Ms. Flores de Maduro, and, instead, waited weeks to do so—only after a motion to dismiss the case against Mr. Maduro was publicly filed; 3) if, as the government now claims, the issuance of each of the Original Licenses was merely an "administrative error," why OFAC asserted that it was amending the license related to Ms. Flores de Maduro after consultation with the State Department about United States policy, since OFAC would not need to consult with the State Department to correct an administrative error;[1]  4) why it is consistent with the national security emergency for OFAC to issue licenses that explicitly permit U.S. persons to receive payment from the government of Venezuela in the context of myriad commercial transactions, including payment for legal fees incurred related to those transactions, but not for funds to be used for legal fees in this case; or 5) why, in other cases, OFAC has permitted a sanctioned third party to pay legal fees for a sanctioned defendant in a criminal case but is refusing to do so in this case. The government's failure to proffer

---

[1] "Original Licenses" refers to the licenses issued on Jan. 9, 2026 to Mr. Maduro and Ms. Flores de Maduro. *See* Ex. 1 to the Pollack Declaration (ECF No. 290-3) and Ex. 1 to the Donnelly Declaration (ECF No. 293-3) filed in support of their respective motions.

*any* evidence on *any* of these issues should result in dismissal, but, at a minimum, warrants an evidentiary hearing to answer these questions.

## INTRODUCTION

This Court is faced with the same question the Supreme Court faced in *Lui*s *v. United States,* 578 U.S. 5 (2016), and the Second Circuit faced in *United States v. Stein,* 541 F.3d 130 (2d Cir. 2008): when can the government interfere with the use of assets that are needed to retain counsel of the defendant's choice, thereby depriving him of that counsel and requiring the Court to appoint an attorney at the taxpayers' expense? *Luis* answered that question by distinguishing between untainted assets and assets traceable to the alleged crime. 578 U.S. at 12-13. The Supreme Court held the government could freeze assets traceable to the alleged offense pre-trial because a defendant does not have a superior property interest in those assets, but the government could not, without violating the Sixth Amendment, restrain untainted assets because the defendant has the superior interest in both the property and her right to counsel of her choice. *See id.* at 9-10, 18-23. *Stein,* though decided earlier than *Luis,* answered this same question in the context of government interference with the right to have legal fees paid by a third-party. 541 F.3d at 154-58 (2d Cir. 2008). Based on the same logic the Supreme Court later applied in *Luis,* the Second Circuit found the government violated the defendants' Sixth Amendment rights when it interfered with their property rights to advancement of fees by implementing an existing Department of Justice policy, the Thompson Memorandum, which discouraged employers from paying employees' defense costs. *See id.* at 156-58.

Here, the government does not dispute that the government of Venezuela will pay the legal fees from untainted funds or that Mr. Maduro and Ms. Flores de Maduro have a property right under Venezuelan law for their fees to be paid by the government of Venezuela. Nor does the

3

government dispute Mr. Maduro and Ms. Flores de Maduro cannot afford retained counsel and therefore OFAC's revocation of the Original Licenses will deprive Mr. Maduro and Ms. Flores de Maduro of the counsel of their choice. Rather, the government argues: 1) it can block counsel from accepting payment from the government of Venezuela because the government is not intentionally blocking counsel from doing so for a nefarious purpose; and 2) Mr. Maduro and Ms. Flores de Maduro should have known that the U.S. government would block payment by the government of Venezuela. Both arguments lack merit.

## ARGUMENT

I.     **The government's interference with Venezuela's payment of their legal fees violates the Sixth Amendment right to counsel of choice and Fifth Amendment Right to Due Process.**

   A.  ***The violation of the Sixth Amendment and Fifth Amendment Due Process rights does not depend on the government having an illegitimate purpose.***

Venezuelan law gives Mr. Maduro and Ms. Flores de Maduro a property right in the payment of their legal fees. OFAC's revocation of the Original Licenses and refusal to reinstate them interferes with their right to retain counsel of their choice since, without the ability to exercise this property right, neither has the ability to fund the defense themselves. *See* Nicolás Maduro Moros Decl. (ECF No. 290-2) and Cilia Flores de Maduro Decl. (ECF No. 293-2) (sworn declarations of inability to pay and willingness to submit financial affidavits at the Court's request).

The government does not argue otherwise. Instead, it argues as an initial matter that to violate the Sixth Amendment, the government's interference must be illegitimate (Gov't Opp. at 9), in this case, purposefully or intentionally directed at undermining the trial defense. (Gov't Opp. at 12). This is not the holding in *Luis*. There, the Supreme Court found a Sixth Amendment violation when the government interfered with the property right that resulted in the defendant's

inability to retain counsel of her choice. *See Luis*, 578 U.S. at 10, 20-23. No part of the Supreme Court's holding was based on the government's purpose, which was understood to be legitimate, preserving substitute assets for the government to assert its own property interest in fines and forfeiture in case of a conviction; further, the preservation of those assets was pursuant to an order of the district court. *See id.* at 15-16.

The prosecutors' purposeful conduct became an issue in *Stein* because the court had to determine if the decision of KPMG, the defendants' employer with the duty to pay fees, to deny advancement of fees constituted government action. 541 F.3d at 146-51 (the government's overwhelming influence over KPMG forced it to adopt a constricted fees policy and amounted to state action). Conversely, there is no debate in this case about whether it is the government's action that is preventing the defendants from having the defense paid for by a third-party.

The issue is whether the defendant has a property interest that would allow him or her to fund a defense when the defendant lacks other resources to do so and whether the government has interfered with that property interest. Whether the interference was intentional and the government's motivation for the interference are simply irrelevant. It is the fact of the government's interference that causes the constitutional deprivation. *See id.* at 156; *see also United States v. Stein,* 435 F. Supp. 2d 330, 357-58 (S.D.N.Y. 2006) (interference with right to put on a defense through zealous representation of counsel of choice also violates due process rights).[2]

---

[2] The cases the government cites relating justifiable interference (Gov't Opp. at 12) involve either the freezing of *tainted* funds or find no government interference. *See United States v. Kolfage*, 537 F. Supp. 3d 559 (S.D.N.Y. 2021) (restraining funds where there was probable cause to find the funds were forfeitable proceeds from the charged crimes); *United States v. Emor*, 794 F. Supp. 2d 143, 147 (D.D.C. 2011) (pretrial restraint of tainted forfeitable assets); *United States v. Dupree*, 781 F. Supp. 2d 115, 142-43 (E.D.N.Y. 2011) ("government must establish a nexus between the property and the illegal activity"); *United States v. Fattah*, 858 F.3d 801, 809 (3d Cir. 2017) (government conduct was too attenuated when a federal officer leaked confidential information to

**B.** *The government's evidence of its intent is irrelevant and unconvincing.*

Even if the issue were to turn on a finding of purposeful interference, which it does not, the government's arguments that it did not purposefully interfere either fail on the law or, at a minimum, raise factual questions of the government's intent that merit a hearing.

The government makes a temporal argument, that because the OFAC sanctions existed prior to the invasion of Venezuela and the forcible rendition of Mr. Maduro and Ms. Flores de Maduro, the revocation of the Original Licenses is not indicative of an intent to interfere with the defense. (Gov't Opp. at 13) This argument does not differentiate this case from *Stein* where the Thompson Memorandum was issued in January 2003 and the prosecutor's pressure on KPMG pursuant to that Memorandum started in February 2004. *See Stein*, 541 F.3d at 136-38. "When the government acts prior to indictment so as to impair the suspect's relationship with counsel post-indictment, the pre-indictment actions ripen into cognizable Sixth Amendment deprivations upon indictment." *See id*. at 153.

Moreover, the issue here would be, if it were relevant at all, not the government's intent when it first enacted the sanctions but the government's intent when it revoked, and later refused to reinstate, the Original Licenses. The government asserts that the Original Licenses were both issued due to an administrative error. (Gov't Opp. at 9) Yet, in the case of Ms. Flores de Maduro, on February 11, 2026 counsel specifically called OFAC's attention to the fact that it had amended the Original License related to Mr. Maduro on January 9, 2026 but had not amended the Original License related to Ms. Flores de Maduro (*see* Exhibit A, Pollack Declaration, dated March 19, 2026 ¶ 3). That OFAC kept the Original License related to Ms. Flores de Maduro in place from

---

the press, which reduced the defendant's pre-indictment income and impaired his post-indictment ability to hire his counsel of choice). These cases are plainly inapposite here where the government is blocking the use of untainted funds.

January 9th through February 28th, despite counsel highlighting on February 11th that the Original License remained in place, appears inconsistent with the assertion that the issuance of the Original Licenses was in error.

Further, OFAC, in amending the license related to Mr. Flores de Maduro, sent an email that made no reference to any administrative error. Rather, it said it was revoking the Original License after consulting with the State Department about policy, a step that would have been wholly unnecessary to correct an administrative error. *See* Feb. 28, 2026 email from OFAC, Ex. C to the Donnelly Declaration filed in support of Flores de Maduro motion to dismiss (ECF No. 293-3). In other words, the reason, "administrative error," offered by the government in opposition to this motion is inconsistent with the reason offered contemporaneously by OFAC itself. The government's current explanation should either be rejected outright as pretextual, or, at a minimum, should be explored further at an evidentiary hearing.

**C.** *That the government may have a competing interest does not justify a Sixth Amendment or Due Process violation*.

The *Luis* Court found that the defendant had a property interest in untainted funds and the fundamental nature and importance of the defendant's Sixth Amendment right to retain counsel of choice outweighed the government's interest in preserving that property to be available as substitute assets for forfeiture. *See Luis*, 578 U.S. at 10, 18-23.[3]

The government concedes the defendants' property interest here and does not claim that the government has any competing interest, even an inchoate one, in that property. Rather, it argues that it has a competing policy interest that somehow overrides the defendants' right to counsel of

---

[3] Justice Thomas concurred in the judgment but disagreed with the majority's approach finding the text of the Sixth Amendment and the common law prohibit the government's pretrial interreference with untainted assets regardless of any competing government interest in the property. *See Luis*, 578 U.S. at 28-30.

their choice and due process. Assuming, *arguendo*, a government policy interest in the absence of any governmental interest in the property itself *could* override the defendants' constitutional rights, the government fails to articulate such a policy interest in this case.

The government claims that preventing Venezuela from paying legal fees "serves a legitimate and compelling government purpose." (Gov't Opp. at 14) It, however, never specifies that purpose or explains why prohibiting Venezuela to pay the fees serves that purpose. The government concedes that in some cases OFAC has granted a specific license to allow a third-party to pay defense fees. (Gov't Opp. at 15) It does not explain why OFAC should not do so here.[4]

Further, the government has issued several licenses related to Venezuela for commercial transactions since the first appearance of Mr. Maduro and Ms. Flores de Maduro before this Court, including since this motion was filed, one as recently as March 18, 2026. *See* Maduro Memorandum in Support of Motion at 6-7 (ECF No. 290).[5]

OFAC has explicitly noted that U.S. persons can receive payment for legal fees incurred in conjunction with commercial transactions:

---

[4] Continuing its pattern of raising more questions than providing answers, the government also claims, less than definitively, that it does not believe OFAC has previously granted a license for payment of legal fees for a defendant under U.S. sanctions by a foreign government also under U.S. sanctions. (Gov't Opp. at 8, 15) The government, however, does not state how many, if any, prior applications there have been for a license to accept funds from a foreign government to pay legal fees in a criminal case, much less where the foreign government was obligated to pay the fees. Regardless, and more fundamentally, the government fails to explain why an emergency national security interest would preclude payment of legal fees by a sanctioned foreign government but has not, on other occasions, precluded payment by a sanctioned third-party that was not a foreign government.

[5] A full list of post invasion licenses, including two issued since this motion was filed, is available at https://ofac.treasury.gov/sanctions-programs-and-country-information/venezuela-related-sanctions.

> What activities does Venezuela General License 46B authorize?
>
> GL 46B authorizes activities that are ordinarily incident and necessary to [transactions involving] Venezuelan-origin oil and petrochemical products by an established U.S. entity, which may include: engaging in commercial, **legal**, and technical discussions necessary to scope purchases of Venezuelan-origin oil, including with third-party legal, commercial, or due diligence consultants . . . .

OFAC Venezuela Sanctions FAQ 1227 available at: *https://ofac.treasury.gov/faqs/1227* (emphasis added).

There is no apparent reason why the use of Venezuelan funds to pay for the legal defense in this case jeopardizes national security and the government offers none. The national security emergency rationale that the government invokes, without explaining, has even less force now that the government has normalized relations with the government of Venezuela and recognized the current Venezuelan government. *See* Statement of Interest of the United States at 2, *Stansell v. FARC*, No. 16-mc-00405 (S.D.N.Y. Mar. 11, 2026) (ECF No. 621). The mere invocation of national security, without any meaningful explanation, is not a talisman that overrides a defendant's constitutional rights. *See Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017) ("national-security concerns must not become a talisman used to ward off inconvenient claims") (citation omitted).[6]

---

[6] The government notes that it withdrew recognition of the government of Venezuela in 2019, considers President Maduro to be an illegitimate president, and did not have formal relations with Venezuela from 2019 until recently. (Gov't Opp. at 4) These observations are irrelevant. Just as the property interests in *Stein* were a matter of state law, here they are a matter of Venezuelan law. As the government does not contest, Mr. Maduro and Ms. Flores de Maduro have property rights under Venezuelan law. Their status in the eyes of the United States government is not relevant to that analysis. Similarly, the government's assertion of a national security interest in blocking counsel from receiving funds from the current government of Venezuela must be assessed based on the conditions today, not as they existed previously. Since the government recognizes the current government of Venezuela and has formal relations with it, there is no apparent reason, and the government articulates none, why allowing the government of Venezuela to meet its obligations under Venezuelan law presents a national security concern to the United States.

**II.      The government misreads *Stein'*s holding relating to a "reasonable expectation."**

The government also argues that its interference with the property rights of Mr. Maduro and Ms. Flores de Maduro does not violate their Sixth Amendment rights or Due Process rights because they should have anticipated that if they were abducted from their country and brought before the courts of the United States, the U.S. government would prevent them from receiving the legal fees to which they are entitled under Venezuelan law. This is not what *Stein* means when it discusses a reasonable expectation. Rather, the Court in *Stein* discussed "reasonable expectation" in relation to whether in that case the defendants had a property interest, the issue the government concedes in this case.

*Stein* acknowledged that a contractual right to advancement gives rise to a property right, but even where there is no such written contract or statement in the corporate bylaws, an expectation based on a longstanding practice may also give rise to such a right:

> All of the KPMG Defendants therefore had, at a minimum, every reason to expect that KPMG would pay their legal expenses in connection with the government's investigation and, if they were indicted, defending against any charges that arose out of their employment by KPMG. Indeed, it appears quite possible that all had contractual and other legal rights to indemnification and advancement of defense costs, although the Court declines to decide that in this ruling.

*See United States v. Stein,* 435 F. Supp. 2d 330, 356 (S.D.N.Y. 2006) (citation omitted). The Second Circuit affirmed. *See Stein*, 541 F.3d at 156 ("Defendants were not necessarily entitled to fee advancement as a matter of law . . . but the Sixth Amendment prohibits the government from impeding the supply of defense resources (even if voluntary or gratis), absent justification.").

Neither *Stein* nor *S.E.C. v. FTC Cap. Markets, Inc.,* No. 09 CIV. 4755, 2010 WL 2652405 (S.D.N.Y. June 30, 2010), which Mr. Maduro cited in support of his motion and the government likewise cites, helps the government's argument that where an individual otherwise has a property right, he loses that interest when he should have anticipated that another party may try to interfere

with it. A reasonable expectation that a thief may try to steal your car, or that someone might block your driveway to prevent you from using the car, does not eliminate your property right in the vehicle.

The government cannot insulate itself from its interference with Mr. Maduro and Ms. Flores de Maduro using the property in which they have an interest to retain counsel of their choice by arguing the government made its intention to interfere with the exercise of that property interest in advance. This logic flies in the face of *Stein* itself. The Thompson Memorandum was issued prior to the defendants' indictment. They could have anticipated that the government might, pursuant to that Memorandum, pressure KPMG to not pay the defendants' legal fees. *Stein* nonetheless found that the fact that the government was acting pursuant to a policy that was in place prior to the indictment did not excuse its interference with the defendants' right to counsel of their choice. 541 F.3d at 153 ("In other words, the government's pre-indictment conduct was of a kind that would have post-indictment effects of Sixth Amendment significance, and did.").

### III.     Dismissal is the appropriate remedy.

The government cannot assert "national security" or "foreign policy" and then run roughshod over an individual's domestic trial rights. For example, in prosecutions involving classified information, the government cannot preclude defendants from obtaining material exculpatory evidence, discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963), and using that evidence in their defense in a public trial, simply because the government has a legitimate policy reason to keep the document classified. Under Classified Information Procedures Act (18 U.S.C. App. III), if the government does not offer an adequate substitute, the court must dismiss the indictment. *See United States v. Giffen*, 473 F.3d 30, 33 (2d Cir. 2006) (Under CIPA, "if the court

declines to permit such a substitution, and the government objects to disclosure of the classified information, the presumptive remedy is dismissal of the indictment.").

The Executive Branch, through the classifying authority, is responsible for deciding whether to classify a document to preclude its use at a public trial. But such decisions, like the Executive Branch's decisions by OFAC, while not made by the prosecutors but by others in the Executive Branch, may have consequences in a criminal case. It is the Judicial Branch's responsibility to dismiss a case when a defendant is being deprived of the constitutional rights a fair trial necessarily entails.

The appropriate remedy in this Circuit for government interference with the right to counsel of choice that cannot otherwise be cured is to restore the defendant to the *status quo ante* by dismissal of the indictment. *See Stein*, 541 F.3d at 146, 158. The same remedy is mandated for the due process violation. *See United States v. Stein,* 495 F. Supp. 2d 390, 412-13, 427 (S.D.N.Y 2007).

In arguing that dismissal is a drastic remedy, the government erroneously asserts that Mr. Maduro and Ms. Flores de Maduro have provided no information about their ability to pay. (Gov't Opp. at 22) In fact, in support of their respective motions to dismiss each provided a sworn declaration that they lack the ability to pay for retained counsel. Further, each stated a willingness in their declaration to provide a financial affidavit at the Court's request. In any event, the government cannot contest their ability to pay because it has proffered no evidence to the contrary.

The government also argues, assuming that Mr. Maduro and Ms. Flores de Maduro cannot afford counsel, counsel paid for by the U.S. taxpayers under the Criminal Justice Act is an adequate remedy for the government's violation. (Gov't Opp. at 22) Appointed counsel, however, as the Supreme Court has held, is not an adequate substitute for counsel of choice. *See Luis*, 578 U.S. at

21-22 (denying the defendant the ability to pay for counsel of choice "render[s] less effective the basic right the Sixth Amendment seeks to protect"). The sanction of dismissal of the indictment is necessary to eliminate prejudice to a defendant in a criminal prosecution when the violation is not cured. *See Stein*, 541 F.3d at 136.

If, despite the fact that the government has had the opportunity to proffer evidence in support of its position and has failed to do so, the Court is not prepared at this point to provide the remedy of dismissal, an evidentiary hearing is warranted so that the Court can consider the matter with the benefit of a fully developed evidentiary record.

## CONCLUSION

The Sixth Amendment secures an accused's right "to have the assistance of counsel for his defence." This includes his right to be defended by an attorney of his or her choice. OFAC's revocation of the Original Licenses, and its refusal to reinstate them, has interfered with that right for both Mr. Maduro and Ms. Flores de Maduro. For the reasons stated here and in their memoranda of law in support of their respective motions to dismiss, Mr. Maduro de Maduro and Ms. Flores de Maduro respectfully request this Court dismiss the Fourth Superseding Indictment against them. In the alternative, they request an evidentiary hearing on this motion.

Dated: March 19, 2026                    Respectfully submitted,


                                          /s/ Barry J. Pollack
                                         Barry J. Pollack
                                         HARRIS ST. LAURENT & WECHSLER LLP
                                         1775 Pennsylvania Avenue, N.W., Suite 650
                                         Washington, D.C. 20005
                                         (202) 617-5971
                                         bpollack@hs-law.com

                                         *Counsel for Nicolás Maduro Moros*

13

/s/ Mark E. Donnelly
Mark E. Donnelly
Parker Sanchez & Donnelly, PLLC
700 Louisiana, Suite 4520
Houston, Texas 77002
(713) 659-7200
Mark@PSD.law

*Counsel for Cilia Flores de Maduro*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of March 2026, I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

*/s/ Barry J. Pollack*
Barry J. Pollack
